1

2

3

4          IN THE UNITED STATES DISTRICT COURT

5          FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    SRI LOUISE COLES, et al.,

8                              Plaintiffs,          NO. C03-2961 TEH

9                    v.                             ORDER DENYING
                                                    DEFENDANTS' MOTIONS
10   CITY OF OAKLAND, et al.,                       TO DISMISS

11                             Defendants.

12

13   LOCAL 10, INTERNATIONAL
     LONGSHORE AND WAREHOUSE
14   UNION, et al.,

15                             Plaintiffs,          NO. C03-2962 TEH

16                   v.

17   CITY OF OAKLAND, et al.,

18                             Defendants.

19

20          These matters came before the Court on Monday, March 7, 2005, on Defendants'

21   motions to dismiss.  Although Defendants filed a separate motion in each of the above cases,

22   the cases concern the same April 7, 2003 antiwar demonstration at the Port of Oakland, as well

23   as the same allegations of use of force by Defendants.  In addition, the primary issue – whether

24   Plaintiffs can state a claim for relief based on the Fourth Amendment – is common to both

25   motions.  Thus, the Court finds it appropriate to address both motions in a single order.  After

26   carefully considering the parties' written and oral arguments, the factual allegations in

27   Plaintiffs' complaints, and relevant case law, the Court DENIES Defendants' motions in both

28   cases for the reasons set forth below.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   **BACKGROUND**

2       Plaintiffs are demonstrators, legal observers, videographers, journalists, and

3   dockworkers who, on April 7, 2003, gathered outside the gate entrances of two companies at

4   the Port of Oakland that had economic involvement in the war in Iraq.  They allege that Oakland

5   police officers used excessive force at various times throughout that morning's demonstration,

6   sometimes without any warning and at other times after giving orders to disperse that were

7   allegedly inaudible to most of the crowd.  Plaintiffs allege that Defendants aimed and fired

8   projectiles, such as wooden dowels, "flexible batons" (bean bags), and sting ball grenades filled

9   with rubber pellets and tear gas, directly at Plaintiffs and, in some cases, from close range.

10  Defendants also allegedly charged Plaintiffs with motorcycles and hit them with clubs.  The

11  police allegedly never gave a clear order directing what Plaintiffs should do or where they

12  should go to avoid being shot at or otherwise subjected to force.

13      Plaintiffs allege that the police continued to shoot Plaintiffs with projectiles and charge

14  them with motorcycles even after they started to leave the protest area by walking up the only

15  avenue not blocked off by police.  According to the allegations, the police herded Plaintiffs

16  from the port area to the West Oakland BART station – a path of more than a mile – and also

17  pursued a group of Plaintiffs who walked from the BART station to the Oakland federal

18  building, periodically hitting them with motorcycles and shooting projectiles at them.

19      Based on these allegations, Plaintiffs in both cases assert violations of their First,

20  Fourth, and Fourteenth Amendment rights under the United States Constitution.  Plaintiffs also

21  contend that Defendants violated various provisions of the California Constitution and other

22  California state laws.  Defendants now move to dismiss the Fourth Amendment claims brought

23  by all plaintiffs who were not arrested in connection with the demonstration.[1]  Defendants also

24  move to dismiss the First Amendment claim asserted by the union plaintiffs in the *Local 10*

25  case.

26

27  _____

28      [1]Only a handful of plaintiffs were arrested.  Defendants do not seek dismissal of the
    Fourth Amendment claims based on allegedly excessive force used during these arrests.

2

**United States District Court**
For the Northern District of California

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court should not grant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir. 1998).

In deciding whether a case should be dismissed, a court may generally only consider the complaint and any attached exhibits that have been incorporated therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, the court may consider a document external to the complaint if the complaint "necessarily relies" on the document and no party contests the document's authenticity. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). The court may also consider facts for which judicial notice is appropriate. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Thus, while the court must generally accept as true the factual allegations of the complaint and construe those allegations in the light most favorable to the plaintiff, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (9th Cir. 2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

**DISCUSSION**

**I.    Fourth Amendment Claims**

Plaintiffs in both cases assert that Defendants' use of force violated the Fourth Amendment. Defendants seek dismissal of Plaintiffs' Fourth Amendment claims on grounds that Plaintiffs' excessive force claims must be analyzed under the substantive due process clause of the Fourteenth Amendment rather than under the Fourth Amendment's ban on

**United States District Court**
For the Northern District of California

1   unreasonable searches and seizures.  In *Graham v. Connor*, the Supreme Court held that "*all*

2   claims that law enforcement officers have used excessive force – deadly or not – in the course

3   of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

4   Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due

5   process' approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Where no search or

6   seizure is involved, however, the substantive due process framework applies.  *County of*

7   *Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).  Under this latter framework, use of force is

8   unconstitutional only if it "shocks the conscience."  *Id.* at 845-55.  The parties here do not

9   dispute that Plaintiffs were not arrested or stopped for investigation, and Plaintiffs do not

10   allege that they were searched by Defendants.[2]  The key issue in deciding Defendants' motions

11   is therefore whether Plaintiffs were subject to an "other 'seizure'" triggering the Fourth

12   Amendment's protections.

13          Defendants acknowledge that no court has ever applied the substantive due process

14   clause to an excessive force claim in an analogous case.  To the contrary, several courts have

15   analyzed similar claims under the rubric of the Fourth Amendment.  Most of these courts,

16   however, failed to engage in any inquiry regarding whether the Fourth Amendment was the

17   appropriate framework for analyzing plaintiffs' claims.  *E.g., Russ v. Jordan*, 1992 U.S. Dist.

18   LEXIS 19484, No. C-92-1084 MHP, at *12-18 (N.D. Cal. Dec. 8, 1992) (applying the Fourth

19   Amendment reasonableness standard to a case involving a baton strike to a demonstration

20   observer whom officers had no intent to arrest, without first analyzing whether the plaintiff was

21   "seized"); *see also Otero v. Wood*, 316 F. Supp. 2d 612, 621 n.5 (S.D. Ohio 2004) (applying,

22   without explanation, Fourth Amendment analysis to plaintiff's excessive force claim where

23   plaintiff alleged that police fired wooden batons at her as part of a crowd-dispersal technique

24   and where plaintiff's complaint failed to clearly identify under which constitutional

25   amendment her excessive force claim arose); *Secot v. City of Sterling Heights*, 985 F. Supp.

26   715, 720-21 (E.D. Mich. 1997) (applying Fourth Amendment standard to excessive force

27   claim without analyzing whether the circumstances constituted a "seizure," in case involving

28          [2]These motions do not concern the claims of those plaintiffs who were arrested.

4

United States District Court

For the Northern District of California

1  use of baton to move protesters); *Lamb v. City of Decatur*, 947 F. Supp. 1261, 1265-66 (C.D.

2  Ill. 1996) (same, in case involving use of pepper spray on protesters).  Similarly, although the

3  Sixth Circuit has discussed the difference between the Fourth Amendment and due process

4  standards for excessive force claims, that court explicitly did not decide which framework

5  applied to a crowd-control situation because it found, on review of a summary judgment ruling,

6  no disputed material fact under either standard.  *Darrah v. City of Oak Park*, 255 F.3d 301,

7  305-06 (6th Cir. 2001).

8          It appears that only one court, a district court in the District of Oregon, has directly

9  decided the issue of whether a Fourth Amendment claim can arise from the police's use of

10  force to move plaintiffs as part of the police's crowd-control or crowd-dispersal tactics.

11  *Marbet v. City of Portland*, 2003 U.S. Dist. LEXIS 25685, No. CV 02-1448-HA (D. Or. Sept.

12  8, 2003).  In that case, demonstrators protesting against President Bush were blocking the

13  entrance to a Bush fundraiser.  After plaintiffs allegedly ignored orders to disperse, defendants

14  "applied pepper spray and moved the crowd with force.  Later in the day, the police used

15  additional tactics to subdue the crowd, including firing rubber bullets at members of the

16  protest."  *Id.* at *2-3.  Defendants argued that the Fourth Amendment did not apply because

17  there was no seizure, but the court concluded to the contrary:

18              The Amended Complaint alleges facts, which, if proved, would
                establish that defendants intentionally restrained plaintiffs'
19              freedom of movement.  Plaintiffs allege that defendants
                intentionally applied pepper spray and shot rubber bullets at
20              plaintiffs who were engaged in lawful protest activities.
                Further, the protesters were physically moved back from their
21              peaceful positions, according to the Amended Complaint.  In
                their supporting memorandum, defendants appear to contend
22              that the Fourth Amendment is not offended by the intentional
                use of force that physically injures a citizen and only *reduces*
23              his or her freedom of movement.  If the citizen is able to walk
                or hobble away, according to defendants, no Fourth
24              Amendment violation has occurred. However, as the Supreme
                Court has held, "The word 'seizure' readily bears the meaning
25              of laying on of hands or application of physical force to
                restrain movement, even when it is ultimately unsuccessful."
26              *California v. Hodari D.*, 499 U.S. 621, 626, 113 L. Ed. 2d
                690, 111 S. Ct. 1547 (1991).

27

28              Defendants admit that on August 22, 2002, the police
                physically moved the protesters approximately 120 feet in

5

**United States District Court**
For the Northern District of California

1    order to create a larger entryway to the street. Defendants
2    used pepper spray and physical force to achieve this
     movement. Clearly the effect of defendants' actions was to
     control plaintiffs' movement. Additionally, certain plaintiffs
3    assert that they were physically prevented from leaving an area
     cordoned off by the police. By physically moving certain
4    plaintiffs and circumscribing the area of movement of other
     plaintiffs, defendants seized plaintiffs within the meaning of
5    the Fourth Amendment.

6    *Id.* at *26-28.

7           In sum, Defendants find no support for their position in any of the cases that have

8    previously addressed the use of force in the crowd-control or crowd-dispersal context. The

9    district court in *Marbet* explicitly held to the contrary, finding that the police's use of force in

10   that case constituted a seizure and that the Fourth Amendment therefore governed the

11   plaintiffs' excessive force claims. The court reached that conclusion even though only some

12   plaintiffs alleged that they were held in a confined area and even though it appears that the

13   police intended to "move[] the protesters . . . to create a larger entryway to the street," *id.* at

14   *27, rather than to arrest them. In addition, several other district courts, including one in this

15   district, have applied a Fourth Amendment analysis to excessive force claims arising in crowd-

16   control or crowd-dispersal situations, albeit without explicitly finding that the facts at issue

17   constituted a seizure.

18          Moreover, this Court independently finds Defendants' position – that Plaintiffs' factual

19   allegations do not, as a matter of law, constitute a Fourth Amendment seizure – to be

20   unsupported by controlling precedent. In *Brower v. County of Inyo*, the Supreme Court

21   explained that "[v]iolation of the Fourth Amendment requires an intentional acquisition of

22   physical control." *Brower*, 489 U.S. 593, 596 (1989). The Court continued:

23          Thus, if a parked and unoccupied police car slips its brake and
            pins a passerby against a wall, it is likely that a tort has
24          occurred, but not a violation of the Fourth Amendment. And
            the situation would not change if the passerby happened, by
25          lucky chance, to be a serial murderer for whom there was an
            outstanding arrest warrant – even if, at the time he was thus
26          pinned, he was in the process of running away from two
            pursuing constables. It is clear, in other words, that a Fourth
27          Amendment seizure does not occur whenever there is a
            governmentally caused termination of an individual's freedom
28          of movement (the innocent passerby), nor even whenever

                                                    6

**United States District Court**
For the Northern District of California

1
2
3

> there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

4   *Id.* at 596-97.  This last scenario is exactly the case here.  The complaints allege that

5   Defendants intentionally applied force – in the form of wooden bullets, bean bags, grenades,

6   batons, and motorcycle hits – to stop Plaintiffs' freedom of movement, essentially funneling

7   Plaintiffs down a mile-long path from the port to the BART station, and that Plaintiffs

8   submitted to Defendants' authority by following the only route left open to them by the police.

9        The cases at issue are therefore different from cases where a person's freedom of

10   movement is terminated, but not by "means intentionally applied."  *Compare, e.g., Lewis*, 523

11   U.S. at 843-44 (no seizure when person died when police car ran into motorcycle after high-

12   speed chase because the police only intended to stop the person by flashing lights and

13   continuing pursuit, not by crashing into him); *Childress v. City of Arapaho*, 210 F.3d 1154,

14   1157 (10th Cir. 2000) (no seizure when innocent hostages are accidentally shot by police

15   because police only intended to stop the suspects driving the van and the van itself, and they did

16   not intend to stop the hostages).  They also differ from cases where no physical force was used

17   and the person in question did not submit to the police's show of authority by non-physical

18   means.  *Compare California v. Hodari D.*, 499 U.S. 621, 625-29 (1991) (holding that an

19   "arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion

20   of authority," and finding no seizure before Hodari was tackled because, prior to that point, no

21   force was used and Hodari failed to submit to police authority).

22        The situation in *Fuller v. Vines*, in which the court found no seizure where the police

23   pointed a gun at an individual but never indicated that the person was not free to leave, is also

24   distinguishable.  *Fuller*, 36 F.3d 65, 68 (9th Cir. 1994).  Unlike the plaintiff in that case,

25   whose only restriction was that he could not attack the police officers, Plaintiffs here were

26   forced to move in a single direction.  Thus, these cases are essentially the opposite of *Fuller*;

27   Defendants left Plaintiffs with only a single option, whereas the police in *Fuller* merely

28

**United States District Court**
For the Northern District of California

1    foreclosed one option and left all other options open.[3]  In other words, the police in *Fuller* did

2    not terminate the plaintiff's freedom of movement, which is a prerequisite to finding that a

3    seizure occurred.  *Brower*, 489 U.S. at 596-97 .  Here, by contrast, Defendants took control of

4    Plaintiffs' movement by leaving only one path open to Plaintiffs and forcing Plaintiffs to move

5    down that path.  A reasonable person in Plaintiffs' position would have believed that he or she

6    was "not at liberty to ignore the police presence and go about their business."  *United States v.*

7    *Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (citations omitted) (discussing standard for

8    determining when a person's liberty is restrained and explaining that a seizure occurs whenever

9    a law enforcement officer uses coercion, physical force, or other show of authority to restrain

10   a person's liberty).

11          Contrary to Defendants' assertions, a person may be seized without becoming

12   completely immobile or being forced to remain in one location.  As noted, the Supreme Court

13   in *Brower* required only that a person's *freedom of movement* be terminated, not that the

14   person's *movement* be terminated.  *Brower*, 489 U.S. at 596-97; *see also Marbet*, 2003 U.S.

15   Dist. LEXIS 25685, at *27 (rejecting defendants' argument that no Fourth Amendment seizure

16   occurs where a citizen is physically injured by the intentional use of force but is still "able to

17   walk or hobble away").  The dispositive question is one of control:  Did the police control the

18   plaintiff's movement through the use of force intentionally applied for that purpose?  *See*

19   *Florida v. Bostick*, 501 U.S. 429, 435-36 (1991) (key issue in determining whether a seizure

20   has occurred is the "coercive effect of the encounter" with police); *Hodari D.*, 499 U.S. at 624

21   (at common law, "seizure" connoted "bringing [an object] within physical control"); *Brower*,

22

23

24

25   _____

26          [3]*Gause v. City of Philadelphia* is distinguishable for the same reason.  In *Gause*, the
     police told the plaintiff to leave the scene, but the plaintiff's freedom of movement was not

27   otherwise restricted.  *Gause*, No. 00-1052, 2001 U.S. Dist. LEXIS 17428, at *5-7 (E.D. Pa.
     Sept. 27, 2001).  The court found no seizure under these circumstances because "a reasonable

28   person in Plaintiff's position would have reasonably understood that she was free to leave."  *Id.*
     at *6.

1   489 U.S. at 596-97 (termination of freedom of movement must be caused by means

2   intentionally applied).[4]

3          Defendants also erroneously assert that a seizure occurs only when the use of force is

4   accompanied by the intent to arrest.  Notably, Defendants cite no case that held that intent to

5   arrest is required for a seizure nor, relatedly, any case where the court held that there was no

6   seizure because the police did not intend to arrest the plaintiff.  Defendants argue that "where

7   there is a use of force without the intent to arrest, and the subject is free to leave, as in *Fuller*,

8   *Schaefer* and *Gause*, there is no seizure."  *Local 10* Mot. at 9.  However, these cases do not

9   depend on the intent to arrest; instead, as discussed above, the courts' findings of no seizure

10  were based on the police's failure to control the movement of the person in question or on the

11  conclusion that a reasonable person in the individual's position would have felt free to ignore

12  the police and go about his or her business.

13         Beyond that, the Ninth Circuit has held that intent to arrest is not required to find a

14  seizure under the Fourth Amendment.  *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir. 1989).  The

15  court rejected the defendant's argument that a seizure requires intent to arrest and instead held

16  that use of deadly force constituted a seizure, whether that use of force was "for the purpose of

17  effectuating an arrest or other stop, or for the purpose of self-defense."  *Id.*  The court's

18  emphasis in determining whether a seizure occurred was on the "acquisition of physical control

19  by a law enforcement official," and the court identified three elements for a Fourth

20  Amendment seizure:  "(1) governmental (2) termination of freedom of movement (3) through

21  means intentionally applied."  *Id.* (citing *Brower*).  The court declined to add a fourth element

22  – intent to arrest – that the defendant in that case, like Defendants here, suggested was

23  required.

24

25  _____

26         [4]Thus, *Schaefer v. Goch*, a case cited by Defendants, does not support Defendants'
    argument.  In *Schaefer*, the Seventh Circuit found no seizure because the police never gained

27  control of the individual's movement.  *Schaefer*, 153 F.3d 793, 796-97 (7th Cir. 1998)
    (decedent was not seized because she could have chosen to move despite police presence and

28  the police were in no position to stop another individual from taking control of the decedent's
    movement, which is what ultimately occurred).

1   Defendants also cite the following sentence from *Hodari D.* to support their position:

2   "We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond

3   its words and beyond the meaning of arrest, as respondent urges."  *Hodari D.*, 499 U.S. at 627.

4   However, Defendants read this statement too broadly.  In *Hodari D.*, the Court was not

5   concerned with whether officers must intend to arrest a citizen before the Fourth Amendment

6   protects that citizen's rights.  Instead, the Court was concerned with extending Fourth

7   Amendment protections to all assertions of police authority, regardless of whether force was

8   used or whether the person submitted to that authority.  *Hodari D.* stands only for the

9   proposition that a seizure does not occur when police do not use physical force and instead

10   attempt to restrain the liberty of a citizen by a show of authority, but the police's target fails to

11   submit to that show of authority.  To the extent that the Court intended anything more by the

12   statement relied on by Defendants, it is dicta and therefore not binding on this Court.  Intent to

13   arrest was clearly present in *Hodari D.*, and the Court therefore did not need to decide whether

14   a seizure requires intent to arrest.

15   In short, the Court concludes that the definition established by the Supreme Court

16   in *Brower* continues to govern what is considered a seizure under the Fourth Amendment.

17   Under *Brower*, a seizure occurs "when there is a governmental termination of freedom of

18   movement *through means intentionally applied*."  *Brower*, 489 U.S. at 597.  Thus, a seizure

19   does not require intent to arrest but, instead, requires only intent to terminate an individual's

20   freedom of movement by the means through which freedom of movement is actually

21   terminated.  Viewing the factual allegations in these cases in a light most favorable to

22   Plaintiffs, the Court concludes that this test is satisfied here.  Defendants allegedly did far

23   more than simply order Plaintiffs to disperse from the scene or attempt to control the crowd

24   gathered at the scene of the demonstrations.  To the contrary, Defendants allegedly left

25   Plaintiffs with only one available path by which to leave the scene and applied physical force to

26   ensure that Plaintiffs followed that path.  Defendants' use of force against Plaintiffs allegedly

27   continued even after Plaintiffs left the protest area.  The Court therefore concludes that, under

28   the facts as alleged, Defendants terminated Plaintiffs' freedom of movement through means

1    intentionally applied, and that, as result, Plaintiffs may invoke the protections of the Fourth

2    Amendment.[5]  The Court's decision is the same result reached by the only other district court

3    to have explicitly decided the issue, and it is also in accord with the several other courts that

4    have implicitly decided that the Fourth Amendment applies to the use of force in crowd-

5    control or crowd-dispersal situations.  Accordingly, for the reasons discussed above, the Court

6    DENIES Defendants' motions to dismiss Plaintiffs' Fourth Amendment claims.

7

8    **II.      First Amendment Claim of the Union Plaintiffs**

9            Defendants also move to dismiss the union plaintiffs' First Amendment claim from the

10   *Local 10* case.  These plaintiffs, Local 10 of the International Longshore and Warehouse

11   Union ("ILWU") and its officers and members, allege that they were "standing by" at the port

12   during the protests because they were awaiting an arbitrator's decision as to whether they

13   should enter the facilities "in the face of the public anti-war demonstration as well as the mass

14   police presence."  *Local 10* Third Am. Complaint ("TAC") ¶ 34.  These plaintiffs allege that,

15   prior to the day of the demonstration, Defendants gathered intelligence about the union's

16   antiwar activities, including an antiwar internal newsletter from the union and e-mail messages

17   to a union group listserv concerning union support for antiwar protest activities.  *Id.* ¶ 30.

18   They further allege that Defendants "deliberately singled out and aimed their weapons and

19   otherwise directed force at and engaged in the other conduct described herein against plaintiff

20   LOCAL 10 and its officers and members because of hostility, animus and discrimination

21   against the ILWU as an organization and against members and officers affiliated with the

22   ILWU."  *Id.* ¶ 48.

23

24   _____

25          [5]As the parties observed at oral argument, application of the Fourth Amendment is a
     fact-specific inquiry.  Thus, the Court need not and does not decide whether all efforts to

26   disperse or control a crowd would constitute a Fourth Amendment seizure.  For example, the
     factual allegations in the cases at hand are distinguishable from hypothetical allegations of a

27   police officer telling a person to get out of the street and onto the sidewalk or of the police
     closing a city block to pedestrian traffic but allowing traffic to flow freely outside of the

28   closed area.  In the latter cases, whether the police terminated freedom of movement would be
     less clear than it is based on the allegations at issue here.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Based on the above allegations, the union plaintiffs clearly allege that they were

2  targeted by the police because of their union membership and the police's animus and hostility

3  towards the union.  If this is true, as the Court must assume it to be for purposes of deciding

4  this motion to dismiss, then Plaintiffs have sufficiently stated a claim for relief under the First

5  Amendment.  Freedom of association "includes membership in unions."  *Greminger v.*

6  *Seaborne*, 584 F.2d 275, 278 (8th Cir. 1978).  As Defendants' counsel conceded at oral

7  argument, Plaintiffs' freedom of association would therefore have been violated if police

8  targeted the union plaintiffs out of hostility towards the union.  Consequently, the Court

9  DENIES Defendants' motion to dismiss the union plaintiffs' First Amendment claim.

10

11 **CONCLUSION**

12    In sum, for the reasons discussed above, and with good cause appearing, the Court

13 hereby DENIES Defendants' motions to dismiss in their entirety.  Plaintiffs in both cases have

14 sufficiently stated a claim for relief for violation of their Fourth Amendment rights, and the

15 union plaintiffs have also sufficiently stated a First Amendment claim.

16    The next scheduled appearance for the parties in these cases is the January 9, 2006

17 pretrial conference.  If the parties believe that a case management conference would be useful

18 prior to that date, they should meet and confer and call this Court's courtroom deputy with

19 potential dates on which all counsel are available.

20

21 **IT IS SO ORDERED.**

22

23 DATED   04/27/05                            /s/

24                                      THELTON E. HENDERSON, JUDGE
                                      UNITED STATES DISTRICT COURT

25

26

27

28