IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SRI LOUISE COLES, et al.,

        Plaintiffs,

v.

CITY OF OAKLAND, et al.,

        Defendants.

NO. C03-2961 TEH

<u>ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTIONS FOR
ATTORNEYS' FEES</u>

LOCAL 10, INTERNATIONAL
LONGSHORE AND WAREHOUSE
UNION, et al.,

        Plaintiffs,

v.

CITY OF OAKLAND, et al.,

        Defendants.

NO. C03-2962 TEH

      These matters come before the Court on Plaintiffs' motions for attorneys' fees. After carefully considering the record in these cases and the parties' written arguments, including the parties' statements of recent decisions, the Court determined that oral argument was unnecessary and cancelled the motion hearing scheduled for September 19, 2005. For the reasons discussed below, the Court concludes that Plaintiffs are entitled to attorneys' fees and costs under both federal and state law. Because Defendants so heavily disputed Plaintiffs' entitlement to fees, the Court is optimistic that the parties may be able to reach agreement on the amount of fees now that Plaintiffs' entitlement has been established by the Court. To facilitate the parties' discussions, the Court refers these cases to Magistrate Judge James Larson for a mandatory settlement conference on the amount of fees and costs to be awarded to Plaintiffs for work on their injunctive and declaratory relief claims. Accordingly, Plaintiffs' motions for attorneys' fees are hereby GRANTED IN PART and DENIED IN

PART, without prejudice to Plaintiffs' returning to this Court for a judicial determination of the amount of fees and costs to be awarded should the parties fail to reach agreement.

**BACKGROUND**

These cases arise from an April 7, 2003 antiwar demonstration at the Port of Oakland. Plaintiffs are demonstrators, legal observers, videographers, journalists, and dockworkers who allege that Oakland police officers used excessive force at various times throughout the demonstration. Plaintiffs allege violations of their First, Fourth, and Fourteenth Amendment rights under the United States Constitution, as well as violations of various California constitutional and statutory provisions.

On December 20, 2004, the parties submitted to the Court a signed stipulation and proposed order approving partial settlement of Plaintiffs' claims for injunctive and declaratory relief. Ex. A to Chanin Decl. The Court signed the order on December 24, 2004, and the order was filed on December 28, 2004. The settlement included as an exhibit a new Oakland Police Department Crowd Control/Crowd Management Policy, which was approved by former Police Chief Richard Word on November 9, 2004. According to the parties' stipulation, "[t]his Policy was the result of over ten months of difficult, comprehensive and non-collusive negotiations between the parties," and the parties have agreed to the policy "as the basis for a partial settlement of this case." *Id.* at 4. Defendants agreed to the partial settlement without admitting liability, and Plaintiffs in both cases agreed to dismiss their claims for injunctive and declaratory relief. *Id.* at 5. The parties further agreed to meet and confer regarding a number of issues, including Defendants' proposed training program under the new crowd control policy, the development of related policy and training documents, and any material changes to the terms of the policy. *Id.* at 5-6. The Court retained jurisdiction over both cases for a three-year period, commencing on December 28, 2004, "to enforce the terms of this settlement, to resolve any disputes that may arise between the parties concerning this settlement or the related matters on which the parties agree to meet and confer as set forth in the parties' stipulation, and if necessary, to resolve Plaintiffs' claims for

attorneys' fees and costs." *Id.* at 8.  The stipulation further provides that "any party may move the court to extend the time [during which this Court retains jurisdiction] for up to an additional 24 months if there is a material breach of the terms of this Stipulation." *Id.* at 6.

In addition, the parties agreed in the stipulation to a procedure for resolving Plaintiffs' claims for attorneys' fees, including a provision that, if the parties were unable to resolve Plaintiffs' claims informally, Plaintiffs would file a motion for attorneys' fees and costs with this Court. *Id.*  Having failed to reach agreement with Defendants, Plaintiffs in both cases have now filed separate motions for attorneys' fees and costs.  Plaintiffs claim only fees and costs related to the settlement of their injunctive and declaratory relief claims and acknowledge that they are not currently entitled to fees and costs for time spent solely on Plaintiffs' claims for damages.  This Court addresses both motions simultaneously because of the significant overlap in factual and legal argument presented by the motions.

The *Coles* plaintiffs, represented by Michael Haddad, Julia Sherwin, and fees counsel Richard Pearl, request a total award of $312,564.81.  This includes a lodestar on the merits of $130,448, with a requested enhancement of 1.5 (for a total of $195,672); a lodestar on fees of $94,183.75, with a requested enhancement of 1.1 (for a total of $103,602.13); and $13,290.68 in costs.

The *Local 10* plaintiffs, represented by James Chanin, Julie Houk, John Burris, Rachel Lederman, Alan Schlosser, Mark Schlosberg, Julia Moss, Bobbie Stein, Osha Neumann, and Robert Remar, seek a total award of $776,998.66.  This includes a lodestar on the merits of $415,643.85, with a requested enhancement of 1.5 (for a total of $623,465.77); a lodestar on fees of $135,056.25, with a requested enhancement of 1.1 (for a total of $148,561.88); and $4971.01 in costs.

## DISCUSSION

**I.   Entitlement to Fees and Costs**

Plaintiffs contend that they are entitled to fees and costs under 42 U.S.C. § 1988, California Code of Civil Procedure section 1021.5, and California Civil Code sections

3

52(b)(3) and 52.1(h). Defendants dispute Plaintiffs' entitlement under all of these provisions and also argue that the plaintiffs who have resolved their individual claims for damages waived any entitlement to attorneys' fees they might have had. The Court first addresses Defendants' waiver argument before analyzing whether Plaintiffs are entitled to attorneys' fees under federal and state law.

**A.  Waiver Issue**

Defendants argue that the majority of plaintiffs have resolved their individual claims for damages and, in so doing, have waived their right to attorneys' fees. Several plaintiffs accepted Rule 68 offers of judgment which included a provision that the amount paid by Defendants "shall include any liability for costs of suit and attorney fees accrued through the date of this offer." *E.g.,* Ex. 11 to Chanin Reply Decl. (Rule 68 offer to Plaintiff Kristin Meeker). However, Defendants' counsel clearly stated at the deposition of Plaintiff Dave Telles that the Rule 68 offers were not intended to have any effect on claims for attorneys' fees related to injunctive and declaratory relief and instead only dealt with the then-pending claims for damages. Ex. 13 to Chanin Reply Decl. at 4:13-5:17. Thus, Defendants cannot now claim that they intended the Rule 68 offers to include a waiver of fees related to Plaintiffs' injunctive and declaratory relief claims.

Other plaintiffs signed settlement agreements that included language stating that, "The undersigned hereby understand, acknowledge and agrees [sic] to the special conditions that follow: . . . c) Each party shall bear its own attorneys' fees and costs regarding the entire Lawsuit." *E.g.*, Ex. A to Helfrich Decl. at 3 (settlement agreement signed by Plaintiff Rebecca Sonchek). The settlement agreements also included a statement that the agreements' terms "are contractual and not mere recitals. The only exception is with regard to the stipulation and order between plaintiff's counsel, the City of Oakland and the Court regarding the declaratory and injunctive relief cause of action and prayer in the Lawsuit." *Id.* at 4-5. Even though the agreement states that "[e]ach party shall bear its own attorneys' fees and costs regarding the entire Lawsuit," that statement must be read in context with the entire agreement and the context of these cases. Given that the agreements specifically carved out

4

as an exception the stipulation and order regarding injunctive relief, that the stipulation and order included a provision by which Plaintiffs' request for fees related to the injunctive relief claims would be resolved, that the individually signed settlement agreements as a whole are concerned only with individual claims for damages and not claims for injunctive relief, and that Defendants did not intend the Rule 68 offers of judgment to bar claims for attorneys' fees related to the injunctive relief claims, the statement about each party bearing its own fees and costs is not clear or unambiguous. The Court therefore does not find that the settlement agreements on individual damages claims waived Plaintiffs' right to recover attorneys' fees for work done on their previously settled injunctive relief claims.[1]

## B. Entitlement to Fees Under Federal Law

Under 42 U.S.C. § 1988(b), a court may award a "reasonable attorney's fee as part of the costs" to the "prevailing party" in an action, such as this one, brought to enforce civil rights under 42 U.S.C. § 1983. Prior to 2001, the Ninth Circuit allowed a plaintiff to obtain attorneys' fees "if his action was a 'catalyst' which motivated the defendant to provide the relief originally sought through litigation," even if the plaintiff failed to obtain a judgment on the merits against the defendant. *Beach v. Smith*, 743 F.2d 1303, 1306 (9th Cir. 1984). However, in 2001, the Supreme Court rejected the catalyst theory when it held that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change" to allow an award of attorneys' fees. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *see Bennett v. Yoshina*, 259 F.3d 1097, 1101 (9th Cir. 2001) (applying *Buckhannon* to § 1988 requests for attorneys' fees). Under *Buckhannon*, 532 U.S. at 604-05, attorneys' fees are proper only where the plaintiff has

---

[1] Moreover, even if the plaintiffs who signed settlement agreements waived their right to attorneys' fees, that would not eliminate Plaintiffs' entitlement to fees because not all plaintiffs signed such agreements. Nor would it result in the percentage reduction proposed by Defendants because there is no evidence that the work performed by Plaintiffs' counsel on the injunctive and declaratory relief claims would have decreased proportionally with fewer plaintiffs. For example, time spent drafting, revising, and negotiating language in the revised crowd control policy would likely have been spent regardless of the number of individual plaintiffs in the case.

5

obtained a court-ordered change in the legal relationship between the parties. Thus, "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees," even though "a consent decree does not always include an admission of liability by the defendant." *Id.* at 604.

The Ninth Circuit has explained that a legally enforceable settlement agreement materially changes the legal relationship between the parties "because the plaintiff can force the defendant to do something he otherwise would not have to do." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) (cited with authority in *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)). The court rejected "dictum" in *Buckhannon* "suggest[ing] that a plaintiff 'prevails' only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree." *Barrios*, 277 F.3d at 1134 n.5. Instead, the Ninth Circuit has held that a plaintiff who obtains a "legally enforceable settlement agreement" in which the district court retains jurisdiction has "obtained a '"judicial imprimatur' that alters the legal relationship of the parties,' as required by *Buckhannon*." *Richard S. v. Dep't of Developmental Serv.*, 317 F.3d 1080, 1088 (9th Cir. 2003) (citation omitted). More to the point, the court has explicitly held "that a plaintiff who succeeds in obtaining a court order incorporating an agreement that includes relief the plaintiff sought in the lawsuit is not a mere catalyst – he is a prevailing party for attorney's fees purposes." *Labotest, Inc. v Bonta*, 297 F.3d 892, 893 (9th Cir. 2002).

Under these precedents, Plaintiffs in these cases are clearly prevailing parties. Like the settlement agreements found by the Ninth Circuit to create an entitlement to attorneys' fees, the settlement in these cases includes relief Plaintiffs sought in their lawsuits – namely, injunctive relief regarding the use of force in crowd situations. Moreover, the settlement agreement was not a private settlement; to the contrary, this Court approved the settlement as an order of the Court. That order provided that the Court would retain jurisdiction to enforce the agreement for a period of three years, with the possibility of a two-year extension if there is a material breach of the agreement, and that the Court would retain jurisdiction to decide

6

Plaintiffs' requests for attorneys' fees. This is sufficient to confer "prevailing party" status on Plaintiffs with respect to their injunctive and declaratory relief claims.

Defendants further argue that, even if Plaintiffs are prevailing parties, special circumstances warrant a denial of fees in these cases. A prevailing party in a § 1983 action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Bauer v. Sampson*, 261 F.3d 775, 785 (9th Cir. 2001) (citation omitted). The Ninth Circuit has adopted the following two-pronged test for evaluating whether special circumstances warrant a denial of fees: "(1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees." *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir. 1999). "The defendant has the burden of showing special circumstances warrant a denial of fees, and the defendant's showing must be a strong one." *Herrington v. County of Sonoma*, 883 F.2d 739, 744 (9th Cir. 1989) (citations omitted).

Upon consideration, the Court finds that Defendants have failed to meet their burden. First, "[t]he congressional purpose in providing attorney's fees in civil rights cases was to eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law." *Seattle Sch. Dist. No. 1 v. Washington*, 633 F.2d 1338, 1348 (9th Cir. 1980) (citation omitted). Defendants dispute that awarding fees in these cases is unnecessary to further the purpose of eliminating financial barriers to the vindication of constitutional rights because no fees were needed to attract competent counsel. However, it is highly likely that so many attorneys were willing to take these cases (and civil rights cases generally) because of the availability of attorneys' fees to prevailing parties. Defendants have made no showing that Plaintiffs would have been able to obtain competent representation in the absence of fee-shifting statutes.

Additionally, Defendants contend that a fees award would discourage voluntary compliance with the law. However, although Defendants initiated an internal review of their crowd control policies prior to the filing of these lawsuits, they failed to respond to citizen complaints filed before the litigation began. Nor did Defendants invite the complainants or

their counsel to discuss the City's crowd control policy prior to the onset of litigation. In addition, Defendants' proposed policy differs markedly from the final result, achieved after what Defendants acknowledge in the settlement agreement was over ten months of difficult and comprehensive negotiations between the parties. Thus, even if Defendants unilaterally began the process of reviewing and revising their crowd control policies, the filing of these lawsuits to enforce Plaintiffs' civil rights, and the involvement of Plaintiffs' counsel in negotiating the language of the revised policies, had significant effects on the outcomes of that process. There is no indication that the same results would have been achieved in the absence of litigation, or even that the internal review would ultimately have resulted in a revised policy at all. Voluntarily reviewing a policy does not equate to voluntarily complying with the law. While Defendants correctly argue that they were under no legal obligation to include Plaintiffs' counsel in the review and revision process, they nonetheless chose to do so, and they subsequently voluntarily entered into an enforceable settlement agreement. The Court finds that awarding fees under the circumstances of these cases would not frustrate the purposes of § 1988.

      The Court also does not find the balance of the equities to favor a denial of fees in these cases. Through this litigation, Plaintiffs negotiated a revised, comprehensive crowd control policy adopted by Defendants that protects the civil rights of persons participating in demonstrations or otherwise gathered as a crowd. This is a significant public benefit. Per the parties' agreement, future violations of this policy are enforceable by the Court, without any requirement of a showing that the acts required by the policy were necessary to ensure compliance with the Constitution or civil rights laws; it is the violation of the policy itself that would give rise to a claim. This, too, significantly benefits the public since it prevents Defendants from violating the policy on grounds that they do not believe compliance with the policy is constitutionally mandated.

      Defendants suggest that their willingness to settle these cases and to take action to review their own policies should result in the denial of fees. However, settlement would not be discouraged by an award of fees because it would still be in Defendants' financial

8

interests to attempt settlement. Defendants' willingness to settle is rewarded by Plaintiffs' generation of fewer fees than would have been generated had these cases proceeded to trial and Plaintiffs obtained a successful verdict.

The Court is also unpersuaded by Defendants' argument that Plaintiffs are not entitled to fees because the policy reached through negotiation provides greater relief for Plaintiffs than could have been obtained at trial. Even if Defendants' allegation is correct, Defendants fail to explain why it would be just to punish Plaintiffs' counsel for achieving greater results. In addition, whether Plaintiffs could have gotten the same relief at trial is irrelevant. Defendants agreed to forego trial, in what presumably was a calculated decision based on the risks and costs of proceeding to trial, and instead opted to enter into a judicially enforceable settlement agreement that grants Plaintiffs the injunctive relief they requested.

Similarly, the Court rejects Defendants' argument that awarding attorneys' fees prior to full resolution of Plaintiffs' damages claims is premature. Even if Defendants were to prevail at trial, and a jury were to find that Plaintiffs' constitutional rights were not violated, the agreement regarding Plaintiffs' injunctive relief claims would still stand. Nothing in the agreement is predicated on a finding of liability, and no jury verdict can alter the fact that the settlement agreement is a material change in the legal relationship between the parties that is fully enforceable by Plaintiffs.

Nor is the amount of Plaintiffs' fee request so large that it shocks the conscience and warrants a complete denial of fees. Defendants' challenge to the reasonableness of Plaintiffs' request is more appropriately addressed when considering the amount of fees to be awarded, not whether fees should be awarded at all.

Likewise, the Court is unpersuaded by Defendants' assertions that they did not anticipate that Plaintiffs' would seek fees and that Plaintiffs' counsel never explicitly stated that they would make a request for fees for their work in negotiating the settlement. Civil rights plaintiffs routinely seek fees after achieving a judicially enforceable settlement agreement, and there was no reason for Plaintiffs' counsel to explicitly inform Defendants prior to the onset of negotiations that they would be seeking fees. Furthermore, the

9

settlement agreement itself specifically references Plaintiffs' intention to seek fees and sets forth a procedure to resolve Plaintiffs' fee request.

Finally, none of Defendants' other purported special circumstances persuades the Court that a fee award would be unjust. For instance, that some of Plaintiffs' counsel in the *Local 10* case received fees for their work in settling a different case, *Allen v. City of Oakland*, a case that gave rise to a negotiated settlement agreement requiring systemic reforms of the Oakland Police Department, does not mean that counsel cannot obtain fees in this unrelated case. Similarly, Defendants' argument that the settlement agreement in these cases would be subject to review by the *Allen* monitoring team, and that therefore fees should not be granted, is undermined by Defendants' refusal to accept Plaintiffs' proposal that the *Allen* monitoring team be involved in the settlement discussions. Nor does the Court find that the City of Oakland's budgetary issues or Defendants' other public policy arguments present good cause to deny Plaintiffs' request for fees.

In short, Defendants have failed to make any showing, let alone the required strong showing, that special circumstances make an award of fees unjust in these cases. Thus, the Court finds that an award of fees and costs is appropriate under 42 U.S.C. § 1988.

**C.      Entitlement to Fees Under State Law**

The Court also finds an award of fees to be appropriate under California Code of Civil Procedure section 1021.5.[2] That statute provides that a court may award attorneys' fees to a "successful party . . . in any action resulting in the enforcement of an important right affecting the public interest," provided that "(a) a significant benefit . . . has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5. In their opposition, Defendants do not argue that any of these criteria is not met, and the Court agrees that these cases satisfy all three criteria. Defendants instead focus their

---

[2] Because the Court finds that Plaintiffs are entitled to fees under section 1021.5, it need not consider whether Plaintiffs are also entitled to fees under different provisions of state law.

10

1  opposition on arguing why Plaintiffs have failed to satisfy the requirements for applying the
2  catalyst theory under state law.  As explained above, however, Plaintiffs in these cases need
3  not rely on the catalyst theory because they obtained a judicially enforceable settlement
4  agreement that materially alters the relationship between the parties.

**II.     Amount of Fees and Costs**

After establishing Plaintiffs' entitlement to fees, a court must next determine the amount of reasonable fees to be awarded.  Under both federal and state law, that amount is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Serrano v. Priest*, 20 Cal. 3d 25, 48 & n.23 (1977).  Under federal law, there is a "strong presumption" that this "lodestar" figure constitutes a reasonable attorneys' fee because most relevant considerations are subsumed within this initial calculation, and adjustment of the lodestar will be appropriate only in "rare" or "exceptional" cases.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 568, 564-65 (1986).  Under state law, however, the lodestar may be adjusted based on such factors as the contingent nature of the fee award and the novelty and difficulty of the questions involved.  *Serrano*, 20 Cal. 3d at 49.  The purpose of allowing an adjustment of the lodestar is to ensure that the fee award is set "at the fair market value for the legal services provided." *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).  "Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001).  In addition, when determining whether to adjust the lodestar, "a trial court should not consider these factors to the extent they are already encompassed within the lodestar"; to do otherwise would result in impermissible double-counting. *Id.*

Because Defendants' position relied so heavily on their belief that Plaintiffs were not entitled to fees at all, the Court is hopeful that the parties may be able to reach agreement on

1  the amount of fees and costs awarded now that the Court has determined Plaintiffs'
2  entitlement to fees.  Thus, rather than expend potentially unnecessary judicial resources, the
3  Court orders the parties to participate in a mandatory settlement conference with Magistrate
4  Judge James Larson.  Judge Larson worked on the settlement of the injunctive relief claims
5  in these cases, and, as a result, he is familiar with all parties, the subject matter of these cases,
6  and the process by which the cases were settled.  Judge Larson will contact the parties
7  regarding the date of the settlement conference after he receives this referral.  If the parties
8  are able to reach agreement prior to the settlement conference date, no such conference shall
9  be necessary.
10         This Court expects the parties to negotiate Plaintiffs' fees and costs in good faith and
11 to attempt to resolve as many issues as possible.  If the parties are unable to fully resolve this
12 matter, Plaintiffs may re-submit the matter to this Court by filing an appropriate motion that
13 narrows the issues for judicial resolution.  The Court will carefully scrutinize any such
14 motion by, for example, analyzing whether Plaintiffs have met their burden in justifying their
15 request for a lodestar multiplier on both their work on the merits and their work on fees, as
16 well as whether Plaintiffs' overall fee request is reasonable.  As a matter of guidance, the
17 Court advises the parties that it has particular concerns about: (1) whether Plaintiffs'
18 counsel's billing records are detailed enough to allow the Court to determine if the number of
19 hours claimed is reasonable and whether the claimed hours exclude all work not related to
20 Plaintiffs' injunctive and declaratory relief claims[3]; (2) whether counsel has established that
21 their fee request should not be reduced for unnecessarily duplicative efforts or inefficiencies
22 resulting from unnecessary levels of staffing; and (3) whether the number of claimed hours
23 for fees work is reasonable.[4]  These concerns are based on the Court's initial review of

---

[3]For example, some of counsel's billing records say nothing more than "meeting" or "telephone call" with listed individuals or co-counsel or, even more generically, "attorney meeting" or "read e-mails."

[4]*See, e.g., Hensley*, 461 U.S. at 433, 437 (holding that fee applicants bear the burden of documenting hours expended and "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," and explaining that a court may reduce the fee award if the applicant's "documentation of hours is inadequate"); *id.* at 434 (noting that "[c]ases may be overstaffed" and that counsel should remove from their fee

1  Plaintiffs' fee request, and this discussion does not present an exhaustive list of issues the
2  Court will consider if the parties are unable to reach agreement on the amount of fees and
3  costs awarded, nor does it indicate that Plaintiffs' fee request will necessarily be reduced
4  based on any of these factors.  Instead, the Court mentions these factors here so that the
5  parties may carefully consider them during their settlement conference with Judge Larson
6  and any related negotiations regarding the amount of fees and costs to be awarded to
7  Plaintiffs.

**IT IS SO ORDERED.**

DATED   09/27/05

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

request hours that are "excessive, redundant, or otherwise unnecessary"); *but see Davis v. City & County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) (holding that the participation of multiple attorneys does not necessarily result in non-compensable duplication of effort).