IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SRI LOUISE COLES, et al.,

               Plaintiffs,

v.

CITY OF OAKLAND, et al.,

               Defendants.

NO. C03-2961 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTIONS FOR
ATTORNEYS' FEES AND
COSTS

This matter came before the Court on Thursday, September 7, 2006, on Plaintiffs' motions for attorneys' fees and costs.[1]  After careful consideration of the parties' written and oral arguments, supporting documentation, and the record herein, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motions as discussed below.

**BACKGROUND**

This case arises from an April 7, 2003 antiwar demonstration at the Port of Oakland during which Plaintiffs Sri Coles, Ron Smith, Jennifer Hansen, Dave Telles, Scott Bohning, and Lindsay Parkinson allege that Oakland Police Officers used excessive force against them.  Plaintiffs sought injunctive relief and damages for alleged violations of their First, Fourth, and Fourteenth Amendment rights under the United States Constitution, as well as violations of various California constitutional and statutory provisions.  This Court consolidated this case for settlement and pretrial purposes with *Local 10, International Longshore and Warehouse Union, et al., v. City of Oakland, et al.*, No. C03-2962 TEH (hereinafter "*Local 10*"), a case with similar claims involving the same demonstration.

---

[1]Plaintiffs filed two separate motions: one for work performed on Plaintiffs' injunctive relief claims and the second for work on Plaintiffs' damages claims.

On December 28, 2004, the Court filed an order approving settlement of the injunctive relief claims in both this case and *Local 10*.  The settlement included a new Oakland Police Department crowd control policy.  It also provided that the parties would attempt to agree on a reasonable award of attorneys' fees for work on Plaintiffs' injunctive relief claims, but that Plaintiffs could file a motion with this Court if the parties were unable to reach agreement.

Plaintiffs in both this case and *Local 10* were unable to resolve their claims for attorneys' fees and subsequently filed fee motions in May 2005.  On September 27, 2005, this Court granted in part and denied in part both motions.  The Court found that Plaintiffs were entitled to attorneys' fees and costs associated with their claims for injunctive relief and referred the parties to Magistrate Judge James Larson for a settlement conference regarding the amount of fees and costs to be recovered.  Sept. 27, 2005 Order Granting in Part & Denying in Part Pls.' Mots. for Attorneys' Fees (hereinafter "Sept. 27, 2005 Order").

Plaintiffs' damages claims proceeded separately from their injunctive relief claims.  After three unsuccessful settlement conferences, Defendants made offers of judgment to Plaintiffs in February 2005 pursuant to Federal Rule of Civil Procedure 68.  Haddad 2d Suppl. Decl. ¶ 18.  On March 2, 2005, Plaintiff Telles accepted Defendants' Rule 68 offer for $8500, inclusive of attorneys' fees and costs related to his damages claims.  Haddad 3d Suppl. Decl. ¶ 22 & Ex. G at 4-5.  None of the other six Plaintiffs accepted Defendants' Rule 68 offers, which Defendants withdrew on March 10, 2005.  Haddad 2d Suppl. Decl. ¶ 18; Haddad 3d Supp. Decl. Ex. B.

However, Plaintiffs all ultimately settled their damages claims with Defendants.  Plaintiff Coles settled her claims on November 28, 2005, for $210,000, inclusive of attorneys' fees and costs related to her damages claims.  Haddad 2d Supp. Decl. ¶ 16.  On December 14, 2005, less than six weeks prior to the January 24, 2006 trial date, Plaintiffs Bohning, Hanson, Parkinson, and Smith settled for $30,000, $10,000, $31,250, and $48,000, respectively, exclusive of attorneys' fees and costs.  *Id.* ¶ 16 & Ex. F.  All plaintiffs in *Local 10* also settled their damages claims prior to trial.

1    With the assistance of Magistrate Judge Larson, the *Local 10* parties reached

2  agreement on the amount of fees and costs to be awarded for work on both injunctive relief

3  and damages claims.  However, the parties in this case were not able to reach such

4  agreement, and this motion followed after two unsuccessful settlement conferences with

5  Judge Larson.

6    Plaintiffs' counsel – Michael Haddad, Julia Sherwin, and Richard Pearl, as special

7  fees counsel – now request a total award of $853,380.03, including work on the merits of

8  Plaintiffs' injunctive relief and damages claims, as well as work in seeking attorneys' fees on

9  both sets of claims.  Plaintiffs seek a total of $357,375.36 for work related to their injunctive

10  relief claims as follows: a lodestar on the merits of $124,704, with a requested 1.5

11  enhancement (for a total of $187,056); a lodestar on fees up until the September 27, 2005

12  order of $97,531.25, with a requested 1.1 enhancement (for a total of $107,284.37); a

13  lodestar on the remaining fee-related work of $38,446.25; $13,290.68 in costs; and post-

14  judgment interest in the amount of $11,290.06.  On the damages claims of Plaintiffs

15  Bohning, Hanson, Parkinson, and Smith, which settled exclusive of fees and costs, Plaintiffs

16  seek a total of $496,004.67 as follows: a lodestar on the merits of $297,062.00, with a

17  requested 1.5 enhancement (for a total of $445,593.00); a lodestar on fees of $30,460; and

18  $19,951.67 in costs.

19

20  **DISCUSSION**

21  **I.     Entitlement to Fees and Costs**

22     **A.     Undisputed Issues: Entitlement for Injunctive Relief Claims and**

23          **Entitlement Under Federal Law for Damages Claims**

24    This Court has already ruled that Plaintiffs are entitled to reasonable attorneys' fees

25  and costs under both federal and state law for work related to Plaintiffs' injunctive relief

26  claims.  Sept. 27, 2005 Order at 10.  Defendants also do not dispute that Plaintiffs are entitled

27  to fees and costs on their damages claims under federal law.

28

**B.      Disputed Issue: Entitlement Under State Law for Damages Claims**

However, Defendants argue that Plaintiffs are not entitled to attorneys' fees and costs under state law for work done on Plaintiffs' damages claims.  This is significant because, as discussed below, state law allows for a multiplier on fee awards, while federal law does not.

Plaintiffs first contend that they are entitled to fees and costs under California Code of Civil Procedure section 1021.5, a primary purpose of which is to encourage lawsuits that enforce strong public policies and benefit a large class of persons where "without some mechanism authorizing the award of attorneys fees, [these] private actions . . . will as a practical matter frequently be infeasible." *Woodland Hills Residents Ass'n v. City Council*, 23 Cal. 3d 917, 933 (1979).  The statute provides that:

> A court may award attorneys' fees to a successful party . . .
> in any action which has resulted in the enforcement of an
> important right affecting the public interest if: (a) a
> significant benefit, whether pecuniary or nonpecuniary, has
> been conferred on the general public or large class of
> persons, (b) the necessity and financial burden of private
> enforcement . . . are such as to make the award appropriate;
> and (c) such fees should not in the interest of justice, be paid
> out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5.  Defendants do not contest that Plaintiffs have satisfied prongs (b) and (c) of the statutory requirements, but they do argue that Plaintiffs' damages claims served only to advance the individual plaintiffs' economic interests and therefore cannot be said to have resulted in enforcement of an important public right or to have conferred a significant benefit on the general public.

Contrary to Defendants' position, however, the United States Supreme Court has rejected the notion that a "civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiffs whose rights are violated.  Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued in solely monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986).   Moreover, the California Supreme Court has similarly held that "a case involving the vindication of Constitutional rights automatically meets the first requirement for § 1021.5." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 318 (1983).

4

United States District Court
For the Northern District of California

Plaintiffs easily satisfy that standard here, as their damages claims were based on allegations that Defendants violated their state and federal constitutional rights to be free from excessive and unreasonable force and their rights to free speech and assembly – undeniably important rights affecting the public interest.

Additionally, Defendants' reliance on *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998), is misplaced. In that case, a female employee of a private law firm brought a successful sexual harassment claim against her former supervisor. The plaintiff, who did not seek any form of injunctive relief, was awarded both monetary damages and attorneys' fees under section 1021.5 and the Fair Employment and Housing Act. The appellate court reversed the award of attorneys' fees under section 1021.5, explaining that section 1021.5 "does not authorize an award of fees when the record indicates that the primary effect of a lawsuit was to advance or vindicate the plaintiffs' personal economic interest." *Id.* at 1170. Weeks was thus not entitled to a fee award under that statute because:

> The notoriety of this case may have brought the issue of sexual harassment in employment into the public eye, and the verdict may have sent the message that sexual harassment in the workplace will not be tolerated; however, this action was brought not to benefit the public, but as a means of vindicating Weeks' own personal rights and economic interest.

*Id.* at 1170-1171.

Unlike Weeks, however, Plaintiffs in this case sought injunctive relief as well as damages, and nothing in the record indicates that Plaintiffs were solely, or even primarily, motivated by their own pecuniary interests in pursuing their damages claims. In addition, as the Ninth Circuit has explained, an award of civil rights damages based on unlawful conduct by a law enforcement agency serves "the public purpose of helping to protect" both the plaintiff "and persons like him from being subjected to similar unlawful treatment in the future," which is a significant result achieved for other members of society. *Morales v. City of San Rafael*, 96 F. 3d 359, 364-365 (9th Cir. 1996). This public benefit does not disappear simply because Plaintiffs' pecuniary interests were also served as a result of their damages settlements. Indeed, the Ninth Circuit has upheld a trial court's award of both damages and

United States District Court

For the Northern District of California

attorneys' fees under section 1021.5 to a successful plaintiff claiming age discrimination based in part on the deterrent effect the plaintiff's claim would have on "other governmental agencies from undertaking similar discriminatory activities in the future." *Crommie v. Cal. Pub. Utils. Comm'n*, 840 F. Supp. 719, 722 (N.D. Cal. 1994), *aff'd sub nom. Mangold v. Cal. Pub. Utils. Comm'n*, 67 F. 3d 1470 (9th Cir. 1995).

In light of all of the above, the Court rejects Defendants' opposition to Plaintiffs' entitlement to attorneys' fees and costs under section 1021.5.  Because Plaintiffs may recover a fee award under that statute, the Court need not and does not decide whether Plaintiffs are also entitled to fees under California Civil Code sections 51.7 and 52.1.

## II.    Amount of Fees and Costs: Lodestar Analysis

Under both federal and California state law, the amount of a reasonable fee award is determined by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Serrano v. Priest*, 20 Cal. 3d 25, 48 & n. 23 (hereinafter "*Serrano III*").  However, federal and state law governing attorneys' fees differ in one significant respect:  Under federal law, there is a "strong presumption" that this "lodestar" figure constitutes a reasonable fee award because most relevant considerations are subsumed into this initial calculation, and adjustment to the lodestar will only be appropriate in "rare" or "exceptional" cases.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-565 (1986).  Under state law, on the other hand, the lodestar may be adjusted based on such factors as the contingent nature of the fee award and the novelty and difficulty of the questions involved.  *Serrano III*, 20 Cal. 3d at 49.  "Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001).  In addition, when determining whether to adjust the lodestar, "a trial court should not consider these

1    factors to the extent they are already encompassed within the lodestar"; to do otherwise

2    would result in impermissible double-counting.  *Id.*

3    **A.      Reasonable Hourly Rate**

4        When assessing a reasonable hourly rate under both federal and state law, a court must

5    consider the prevailing market rate charged by attorneys of comparable experience, expertise,

6    and skill for comparable work.  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Children's*

7    *Hosp. & Med. Ctr. v. Bonte*, 97 Cal. App. 4th 740, 783 (2002).  Declarations submitted by

8    fee applicants of the "prevailing market rate in the relevant community . . . [are] sufficient to

9    establish the appropriate [billing] rate for lodestar purposes."  *Davis v. City & County of San*

10   *Francisco*, 976 F.2d 1536, 1547 (9th Cir. 1992) (quoting *Bouman v. Block*, 940 F. 2d 1211,

11   1235 (9th Cir. 1991) (alterations in original)), *vacated in part on other grounds*, 984 F.2d

12   345 (9th Cir. 1993).  Affidavits regarding "rate determinations in other cases, particularly

13   those setting a rate for the fee applicant, are [also] satisfactory evidence of the prevailing

14   market rate."  *United Steelworkers v. Phelps Dodge Corp.*, 896 F. 2d 403, 407 (9th Cir.

15   1990).

16       In this case, Plaintiffs' counsel claim different hourly rates for different stages of the

17   litigation.  For all work completed on both the merits and fees related to Plaintiffs' injunctive

18   relief claims through this Court's September 27, 2005 order, which established Plaintiffs'

19   entitlement to fees on such claims, Mr. Haddad is claiming an hourly rate of $400,

20   Ms. Sherwin is claiming $380, and Plaintiffs' special fees counsel, Mr. Pearl, is seeking an

21   hourly rate of $495.  For all other work, including work on the injunctive relief claims since

22   September 27, 2005, and all work on Plaintiffs' damages claims, Plaintiffs' counsel seek

23   compensation at their 2006 hourly rates: $420 for Mr. Haddad, $400 for Ms. Sherwin, and

24   $525 for Mr. Pearl.  The Court addresses each rate request in turn below.

25   **1.      Injunctive Relief Work Through September 27, 2005**

26       Mr. Haddad and Ms. Sherwin have provided ample evidence to support their claimed

27   hourly rates of $400 and $380, respectively, for work performed prior to September 27,

28   2005.  Mr. Haddad has over fourteen years of experience and Ms. Sherwin has over ten

**United States District Court**
For the Northern District of California

7

United States District Court

For the Northern District of California

1    years.  Both have been involved in a number of civil rights and police misconduct cases and

2    have significant trial experience.  Haddad Decl. ¶¶ 4-8; Sherwin Decl. ¶¶ 6-15.  In

3    determining their claimed hourly rates, Mr. Haddad and Ms. Sherwin consulted with Mr.

4    Pearl and local attorneys, all of whom are knowledgeable about the market rates charged by

5    Bay Area attorneys of similar skill, experience, and expertise for comparable work.  Haddad

6    Decl. ¶ 28; Sherwin Decl. ¶ 31.  In addition, they submitted declarations from Mr. Pearl and

7    two local attorneys, both of whom confirmed that the claimed rates are "in line with those

8    charged by comparably experienced Bay Area attorneys for comparable federal litigation."

9    Bien Decl. ¶ 2; *see also* Sturdevant Decl. ¶ 9.  Mr. Pearl has similarly stated that, based on

10   his review of hourly rates charged by other attorneys in the San Francisco Bay Area and

11   recent fee awards to local attorneys, the "hourly rates claimed by Plaintiffs' counsel in this

12   case are reasonable."  Pearl Decl. ¶ 9.

13        Mr. Pearl's claimed hourly rate of $495 is also supported by the two local attorneys

14   who submitted evidence in support of Plaintiffs' counsel's hourly rates.  Bien Decl. ¶ 2;

15   Sturdevant Decl. ¶ 10.  As one of these attorneys stated, "Mr. Pearl is considered by most to

16   be the leading expert on attorneys fees matters in California."  Sturdevant Decl. ¶ 10.  Over

17   the last five years, Mr. Pearl has successfully handled four cases in the California Supreme

18   Court involving court-awarded attorneys' fees, and he is also the author of a leading treatise

19   on attorneys' fees and other attorneys' fees practice guides.  Pearl Decl. ¶¶ 3-4.  Moreover,

20   another judge in this district found Mr. Pearl's claims hourly rate of $495 to be reasonable in

21   January 2006.  *Id.* ¶ 4.

22        In opposition to Plaintiffs' counsel's requested hourly rates, Defendants have

23   submitted a single affidavit as evidence of the prevailing market rate for attorneys in the

24   community.  However, the information it provides is limited to the average hourly rates,

25   ranging from $130 to $200, for twenty-three firms that have represented public entities in the

26   Bay Area by defending civil rights lawsuits in state and federal courts.  Hickman Decl. ¶¶ 1-2

27   & Ex. 1.  Such generalized information is unpersuasive in light of the more specific evidence

28   submitted by Plaintiffs regarding the prevailing market rate in this area.  Moreover, "[p]rivate

United States District Court

For the Northern District of California

attorneys hired by a government entity to defend excessive force cases are not in the same legal market as private plaintiff's [sic] attorneys who litigate civil rights cases," and rates charged by such defense attorneys therefore cannot be used as a starting point in determining a reasonable hourly rate. *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996).

Defendants also argue that the reasonable hourly rate for Plaintiffs' counsel's work on injunctive relief claims should be determined by reviewing the average hourly rate accepted by *Local 10* counsel in settling their attorneys' fees claims with Defendants. Defendants assert that this average hourly rate is the best measure of the prevailing market rate for the type of work performed by Plaintiffs' counsel, particularly when Plaintiffs' counsel and the *Local 10* attorneys have comparable experience, skill, and expertise. However, when determining the prevailing market rate, the Court must inquire into the hourly rate *charged* by an attorney in the community, not the hourly rate that an attorney would *accept* or *agree to* as a result of settlement negotiations conducted behind closed doors. *See Blum,* 465 U.S. at 895 n. 11; *Children's Hosp. & Med. Ctr.,* 97 Cal. App. 4th at 783. Indeed, the amount a party is willing to accept to settle a dispute is often not the same amount that might have been obtained had litigation continued, nor is it necessarily the amount to which a party is legally entitled. When parties settle, the "agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with the litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 577 n.7 (2004) (quoting *Armour & Co.* with approval). Thus, Defendants' reliance on the amount of attorneys' fees settled on by *Local 10* counsel is inapposite; Plaintiffs' counsel are entitled to a reasonable hourly rate based on the fair market value of their legal services, not the value received in settlement by other attorneys for comparable services.

For all of the above reasons, the Court finds that Mr. Haddad's, Ms. Sherwin's, and Mr. Pearl's requested hourly rates for work performed on injunctive relief claims through September 27, 2005, are reasonable.

**2.  All Other Work**

Plaintiffs' counsel seek fees at their 2006 hourly rates for injunctive relief work performed after September 27, 2005, as well as for all work on Plaintiffs' damages claims: $420, $400, and $525 for Mr. Haddad, Ms. Sherwin, and Mr. Pearl, respectively.  The Court addresses each of Defendants' objections to these hourly rates in turn below.

**a.  Work Performed Prior to Rate Increase**

Defendants first contend that Plaintiffs' counsel should not be paid their 2006 hourly rates for work performed prior to this year.  Under state fee-shifting statutes, however, a fee applicant may be awarded a lodestar amount reflecting their present hourly rate, rather than the lesser rate applicable when the services were rendered.  *Graham*, 34 Cal. 4th at 584.  Awarding fees at the higher rate serves to compensate a fee applicant for delay in receiving payment for services "rendered long in the past[, which] deprives the eventual recipient of the value of the use of the money in the meantime."  *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980)).[2]

In this case, counsel's work on fees related to Plaintiffs' injunctive relief claims has spanned approximately one year, with the majority of Ms. Sherwin's hours occurring in 2005 but the majority of Mr. Haddad's and Mr. Pearl's hours occurring in 2006.  Because the Court does not find that there has been a significant enough delay to justify awarding Plaintiffs' counsel their current hourly rates for work previously performed, Plaintiffs' counsel will each be compensated at their 2005 hourly rates for work performed in 2005 on fees relating to Plaintiffs' injunctive relief claims, and at their 2006 hourly rates for work that was actually performed in 2006.  *Compare, e.g., Gates v. Deukmejian*, 987 F.2d 1392, 1407 (9th Cir. 1992) (awarding fees at higher rate in part because plaintiffs' counsel waited over three years for payment).

The litigation over Plaintiffs' damages claims, however, began over three-and-one-half years ago.  This is a significant period of time in which Plaintiffs' counsel has lost the

---

[2]However, if the lodestar rate is based on a fee applicant's present hourly rate, then, to avoid double-compensation, such delay should not be considered as a factor in enhancing the lodestar.  *Id.* at 584.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   value of the use of money they would have received through investment and interest.  In

2   addition, unlike with their injunctive relief work prior to September 27, 2005, Plaintiffs do

3   not seek interest on their damages fee award, which is another mechanism by which counsel

4   may seek compensation for significant delay in the receipt of payment.  *Graham*, 34 Cal. 4th

5   at 583.  The Court shall therefore compensate Mr. Haddad and Ms. Sherwin at their 2006

6   hourly rates for all work performed on Plaintiffs' damages claims, including work done prior

7   to 2006.

8                    **b.   Damages Work Performed by Ms. Sherwin**

9           Defendants additionally contend that Ms. Sherwin should be compensated at a rate

10  lower than her current hourly rate for work performed on Plaintiffs' damages claims because

11  such work, which Defendants characterize as personal injury work, is typically performed by

12  newer associates.  Based on hourly rates for associates provided in Plaintiffs' supporting

13  declarations, Defendants assert that Ms. Sherwin's damages work should only be

14  compensated at $230 per hour.

15          As explained above, however, courts have rejected the characterization of 42 U.S.C.

16  § 1983 civil rights claims as simply private tort suits.  *Rivera*, 477 U.S. at 575.  Moreover,

17  Defendants have cited no authority for awarding a different hourly rate for different types of

18  legal work performed, and the Ninth Circuit has explicitly rejected this argument.  *Davis*, 976

19  F.2d at 1548.  Therefore, the Court will not reduce Ms. Sherwin's hourly rate based on

20  Defendants' argument that such work is typically performed by less-experienced attorneys.

21                    **c.   Impact of Rate of Inflation**

22          Defendants' final argument against awarding the current hourly rate for work on

23  Plaintiffs' damages claims is that the requested rates outpace the rate of inflation.[3]

24  Defendants cite no authority as to what impact the rate of inflation should have on

25  determining a reasonable hourly rate, but it appears on the Court's own research that inflation

26          [3]Specifically, Defendants note that "Haddad & Sherwin's hourly rates, which they
27  assert were $325 and $290 respectively in 2002, are outpacing the rate of inflation by a factor
    of 3.  For example, Mr. Haddad's rate has increased $90 in four years, or 29%, while the
28  average inflation rate over those four years totals 10%."  Opp'n to Mot. for Fees Re:
    Damages at 7 n.10 (hereinafter "Damages Opp'n").

may be considered as one factor when determining the reasonableness of requested rates. *See Gates v. Rowland*, 39 F.3d 1439, 1451 (9th Cir. 1994) (affirming trial court's decision not to award rate increases where the requested increases "exceeded the rate of inflation and exceeded the rate of increase of other Bay area law firms' fees"). However, the focus of the rate analysis is to ensure that fees are awarded at "prevailing market rates in the relevant community," *Blum*, 465 U.S. at 895, and such rates may be affected by factors other than inflation, such as attorneys' additional years of experience or changes in the legal market. Upon review of all of the evidence submitted by Plaintiffs' counsel in support of their fee motion, the Court finds that the claimed hourly rate increases from 2002 to 2006 appear to be in line with the rate increases of other local Bay Area firms. In the absence of any contrary evidence submitted by Defendants, the Court therefore rejects Defendants' argument that Plaintiffs' requested hourly rates should be reduced based on the rate of inflation.

### 3.   Summary of Reasonable Hourly Rates

In sum, the Court finds that the 2005 and 2006 hourly rates requested by Mr. Haddad, Ms. Sherwin, and Mr. Pearl are reasonable. Plaintiffs' counsel will be compensated at their 2005 hourly rates for all work on Plaintiffs' injunctive relief claims through December 31, 2005. For work performed in 2006 on fees relating to Plaintiffs' injunctive relief claims and all work performed on Plaintiffs' damages claims, the Court will calculate Plaintiffs' fee award based on counsel's 2006 hourly rates. Because awarding fees based on 2006 rates for work performed prior to 2006 serves to compensate counsel for any delay in payment, such delay will not be considered as a factor to enhance the lodestar for the latter categories of work, nor will post-judgment interest be applied to fees claimed on these categories of work.

### B.   Reasonable Number of Hours

Having determined counsel's reasonable hourly rates, the Court now turns to determining a reasonable number of hours. Under both federal and state law, an award of attorneys' fees should include compensation for all hours reasonably spent on the litigation, absent circumstances rendering an award unjust. *Hensley*, 461 U.S. at 429; *Serrano v. Unruh*, 32 Cal. 3d 621, 624, 639 (1982) (hereinafter "*Serrano IV*"). This includes

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

compensation for hours reasonably spent on establishing and defending a fees claim.  *Davis*, 976 F.2d at 1544; *Serrano IV*, 32 Cal. 3d at 632-633, 639.

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."  *Gates*, 987 F. 2d at 1397.  Because attorneys are officers of the court, verified time statements of an attorney seeking fees are "entitled to credence in the absence of a clear indication the records are erroneous."  *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005).  However, a trial court may consider reducing the number of hours claimed when an applicant's "documentation of hours is inadequate."  *Hensley*, 461 U.S. at 433.  For example, although a fee applicant is not required to document in great detail how every minute of his time was spent, counsel should at least "identify the general subject matter of the litigation."  *Id.* at 437 n.12.  When making a fee request, an applicant should also exercise billing judgment by excluding from the request all hours that are "excessive, redundant, or otherwise unnecessary."  *Id.* at 434.  The trial court must carefully review the fee applicant's documentation of hours expended to ensure that there is no unnecessary "'padding' in the form of inefficient or duplicative efforts that are not subject to compensation."  *Ketchum*, 24 Cal. 4th at 1132.

The party opposing a fee application bears the burden of submitting specific objections to rebut an applicant's claim for hours reasonably expended.  *Gates*, 987 F.2d at 1397-1398.  Meeting this burden requires submission of "evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."  *Id.*  Conclusory and unsubstantiated objections are insufficient to warrant reducing a fee request.  *Id.*

### 1.   Injunctive Relief Work

For the injunctive relief portion of this lawsuit, Mr. Haddad claims 392.75 hours, including 218.85 hours on the merits and 173.9 hours on fees, and Ms. Sherwin claims 153.5 hours, including 97.8 hours on the merits and 55.7 hours on fees.  These figures reflect a 15.9-hour reduction for Mr. Haddad and a 5.85-hour reduction for Ms. Sherwin based on

counsel's exercise of billing judgment.  In addition, Mr. Pearl, Plaintiffs' special fees

counsel, claims 87.6 hours for work on fees.

Defendants, who contend that the total number of hours claimed by Plaintiffs' counsel

is unreasonably excessive and duplicative, raise several specific objections to the number of

claimed hours.  The Court addresses each objection in turn below.

**a.    Documentation of Hours**

First, Defendants contend that counsel have not adequately documented the hours

spent on the merits of Plaintiffs' injunctive relief claims "in a manner that will enable a

reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437.  Specifically,

Defendants assert that over one-half of Mr. Haddad's billing entries and over two-thirds of

Ms. Sherwin's billing entries make no reference to "policy work."  Defendants argue that

these entries, adding up to 193.15 of the 316.35 total claimed hours spent on the merits of

Plaintiffs' injunctive relief claims, should be compensated at a rate of twenty percent – a

figure that Defendants appear to have arrived at arbitrarily.

Defendants correctly observe that Plaintiffs' counsel did not specifically reference

"policy work" in the detailed descriptions of their time entries and that this Court previously

expressed concern regarding the level of detail in counsel's time entries.  *See* Sept. 27, 2005

Order at 12.  However, the Court's primary concern was whether the documentation was

sufficient to allow the Court to determine "whether the claimed hours exclude all work not

related to Plaintiffs' injunctive and declaratory relief claims."  *Id.*  This concern was

alleviated when Plaintiffs' counsel brought two separate motions – one for the injunctive

relief claims and one for the damages claims – and submitted separate billing records for

work done on Plaintiffs' injunctive relief claims and Plaintiffs' damages claims.  Based on

counsel's representations as officers of the court, as well as the chronology of the time

claimed and lack of specific objections by Defendants, this Court finds Plaintiffs'

documentation of hours to be adequate.  Moreover, counsel's entitlement to fees for work

done on Plaintiffs' damages claims has now been established; thus, even if some time

United States District Court

For the Northern District of California

1   claimed for injunctive relief work was actually spent on damages, such misclassification of

2   hours would have no significant consequence on Plaintiffs' ultimate fee award.

3          **b.   Internal Discussions and Plaintiffs' Counsel's Contributions**

4                 **to Development of Crowd Control Policy**

5          Second, Defendants contend that it is "simply unfair to ask the City to reimburse

6   multiple lawyers charging very high hourly rates for having endless discussions among

7   themselves on the progress of policy negotiations."  Opp'n to Pls.' Mot. for Fees Re: Decl. &

8   Inj. Relief at 10 (hereinafter "Inj. Relief Opp'n").  Defendants again argue that this Court

9   should only compensate Plaintiffs' counsel at a rate of twenty percent for what Defendants

10  calculate as 65.2 total hours counsel spent in "endless discussions among themselves" and

11  with *Local 10* counsel.

12         However, the Court finds Defendants' calculations to be inaccurate and unreliable.

13  Defendants have submitted two time summaries based on the billing records submitted with

14  Plaintiffs' original fee motion, but these summaries list two different numbers of hours

15  purportedly spent on internal communications by Mr. Haddad and Ms. Sherwin.  *Compare*

16  App. A to Opp'n to Original Mot. for Fees (hereinafter "Original Opp'n") (listing 50.45

17  hours for Mr. Haddad and 17.80 hours for Ms. Sherwin for internal communications) *with*

18  Fox Decl. Ex. B (listing 43.25 hours for Mr. Haddad and 21.95 hours for Ms. Sherwin).  In

19  addition, many of the entries used in Defendants' calculations include other tasks in their

20  descriptions.  For example, Defendants included Mr. Haddad's October 25, 2004 time entry

21  in the first time summary of internal discussions.  App. A to Original Opp'n.  While the time

22  entry totals 1.1 hours, it includes both a telephone call to *Local 10* co-counsel and an e-mail

23  sent to Mr. Haddad's clients regarding the negotiated crowd control policy.  Haddad 2d

24  Suppl. Decl. Ex. A at 11.  There is no discussion of how, or even if, Defendants apportioned

25  the 1.1 hours in this time entry to ensure that only time spent on internal discussions was

26  included in Defendants' final calculations.[4]

27         [4]Defendants filed a supplemental declaration on September 13, 2006, in an attempt to

28  explain how time entries were categorized.  This untimely declaration will not be considered
    by the Court.  Moreover, even if the Court were to consider this declaration, it appears to be

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    Claiming a disproportionate number of hours for communication between attorneys

2   may indicate unreasonable overstaffing such that a reduction in hours is appropriate.  Here,

3   however, the Court has conducted an independent review of the time spent by Plaintiffs'

4   counsel in internal discussions and determined that this time totaled only approximately ten

5   percent of the total time Plaintiffs' counsel spent on the merits of the injunctive relief claims.

6   This percentage does not appear unreasonable to the Court, and the Court therefore will not

7   reduce Plaintiffs' claimed number of hours based on excessive hours claimed for internal

8   communications.

9    Defendants' argument regarding internal communications also reflects Defendants'

10  broader position that Plaintiffs' counsel contributed only minimally to the development of the

11  new crowd control policy that resulted in settlement of the injunctive relief claims in this

12  case and *Local 10*, and that Plaintiffs' claimed number of hours must be reduced accordingly

13  based on duplication of effort.  When analyzing whether time spent by multiple attorneys

14  represents unnecessarily duplicative efforts, courts seek to determine whether the hours

15  claimed by each attorney reflect distinct contributions of each attorney to the case.  *Davis*,

16  976 F.2d at 1544.

17   Defendants' perception in this case appears to result primarily from the lead

18  negotiating role taken by Alan Schlosser, co-counsel in the *Local 10* case, on behalf of

19  plaintiffs in both cases.  However, as Mr. Haddad persuasively explained at oral argument,

20  Defendants' counsel was not privy to the behind-the-scenes efforts of Plaintiffs' counsel.

21  The Court does not find it unreasonable for plaintiffs in this case and *Local 10* to rely on a

22  lead negotiating voice on the crowd control policy, and doing so does not mean that no other

23  attorneys made meaningful contributions outside the actual settlement negotiations.  Indeed,

24  other than a general objection regarding time spent on internal communications, Defendants

25  have pointed to no specific time entries that Defendants believe represent duplicative work

26  by Plaintiffs' counsel and Mr. Schlosser or other counsel for *Local 10*.  Absent such specific

27  _____

28  incomplete; for example, it does not apportion the 1.1 hours for Mr. Haddad's October 25,
2004 entry between internal communications and time spent corresponding with clients.

**United States District Court**
For the Northern District of California

1  objections, the Court finds no reason to reduce Plaintiffs' claimed number of hours based on

2  Defendants' unsubstantiated argument regarding duplication of effort.

3                **c.    Communication with Expert Consultants**

4        Defendants next contend that the 5.3 hours Plaintiffs' counsel spent communicating

5  with two expert consultants, Lou Reiter and Larry Danaher, are not compensable because

6  Plaintiffs never revealed the identity of their experts or "identified ideas, opinions, or

7  suggested language from said expert[s]."  Inj. Relief Opp'n at 10-11.  However, Plaintiffs'

8  experts are identified in the records submitted by Plaintiffs, and Plaintiffs served their expert

9  reports on Defendants.  *E.g.*, Haddad 2d Suppl. Decl. Ex. A at 5 (January 13, 2004 entry for

10  Mr. Haddad referring to "experts Reiter and Danaher"); Haddad 3d Suppl. Decl. ¶¶ 20-21 &

11  Exs. E-F (expert reports by Reiter and Danaher served on Defendants).  In addition, the

12  Court finds that 5.3 hours spent consulting with two experts is reasonable and representative

13  of time ordinarily billed to a client.

14                **d.    Fees Work**

15        Defendants also raise a public-policy objection to the amount of time Plaintiffs'

16  counsel claims for work on fees related to injunctive relief.  Defendants warn that if Plaintiffs

17  were to obtain their full award for time spent on fees work, civil rights plaintiffs' counsel

18  would be encouraged to litigate their cases heavily, refuse any compromise of fees

19  demanded, and pursue a "second major litigation" to obtain maximum fees, in contravention

20  of the Supreme Court's holding in *Hensley*, 461 U.S. at 437.  More particularly, Defendants

21  argue that since *Local 10* counsel settled their attorneys' fees claims for significantly less

22  than they had originally requested, this Court should find that Plaintiffs' counsel are

23  unreasonable for refusing to do the same.

24        However, one of the primary purposes of the private attorney general doctrine, as

25  codified in section 1021.5 of the California Code of Civil Procedure, is to encourage private

26  parties to bring suits that enforce strong public policies and benefit the public interest when

27  they would otherwise be economically infeasible.  *Woodland Hills Residents Ass'n*, 23 Cal.

28  3d at 933.  This purpose would "often be frustrated, sometimes nullified, if awards are

United States District Court

For the Northern District of California

1    diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee

2    claim." *Serrano IV*, 32 Cal. 3d at 632.

3          Plaintiffs' counsel seek a total of 317.2 hours for time spent on fees for work on

4    Plaintiffs' injunctive relief claims, which is slightly more than the 316.65 hours spent on the

5    merits of such claims. On its face, the number of hours claimed for fees work may therefore

6    appear unreasonable. Until the Court issued its September 27, 2005 order, however,

7    Defendants vigorously disputed whether Plaintiffs' counsel were entitled to attorneys' fees

8    for Plaintiffs' injunctive relief claims, and nearly seventy-five percent of Plaintiffs' counsel's

9    total time spent on fees occurred prior to the Court's issuance of that order. Defendants

10    complain that such time was spent unreasonably, but they fail to identify any specific time

11    entries representing work that was unnecessary to respond to Defendants' strong and

12    comprehensive opposition to Plaintiffs' fee request. Defendants cannot be allowed to

13    "litigate tenaciously and then be heard to complain about the time necessarily spent by the

14    plaintiff in response." *Serrano IV*, 32 Cal. 3d at 638 (citations omitted).

15          Moreover, this Court cannot speculate on why counsel in the *Local 10* case opted to

16    settle their claims for fees, and there is no reason to believe that they chose to settle their fee

17    requests because they believed that their initial fee requests were unreasonable. That is,

18    Defendants have not established that Plaintiffs' counsel acted unreasonably in rejecting

19    Defendants' settlement offers after the Court found that Plaintiffs were entitled to fees. If the

20    Court were to punish Plaintiffs' counsel for refusing to settle their fee claims with

21    Defendants, this could have the perverse effect of encouraging losing defendants to oppose

22    fee claims endlessly, or to repeatedly provide low-ball offers of settlement, in an effort to

23    force successful plaintiffs to settle for a fee award that does not adequately compensate them

24    for time reasonably spent on the litigation. Such an outcome would directly contravene the

25    purpose of section 1021.5 and other fee-shifting statutes. Consequently, the Court does not

26    find it appropriate to reduce the number of hours Plaintiffs claim for fee-related work; while

27    the number of such hours is significant, particularly in comparison with the number of hours

28

United States District Court

For the Northern District of California

1    spent on the merits, that does not mean that it is unreasonable in light of the highly disputed

2    nature of Plaintiffs' fee request.

3                              **e.    Mr. Pearl's Hours**

4          Finally, Defendants contend that Plaintiffs' special fees counsel, Mr. Pearl, should not

5    be compensated for all time claimed because one of the declarations he filed contained

6    boilerplate language that mimicked a declaration he filed in a prior federal case.  In essence,

7    Defendants argue that Mr. Pearl is duplicating his own work performed in a previous case

8    and should therefore not be awarded the full amount of fees requested.

9          However, Mr. Pearl attests that he did not bill for time spent preparing material

10   borrowed from other cases and, instead, that he has only claimed time for preparing

11   testimony unique to this case.  Pearl 3d Suppl. Decl. ¶ 4.  Defendants have pointed to no

12   evidence to the contrary, and the Court does not find Mr. Pearl's claimed 87.6 hours over the

13   course of several rounds of briefing and two settlement conferences to be unreasonable.

14                          **2.    Damages Work**

15         For the damages portion of this lawsuit, Mr. Haddad claims 492.1 hours, including

16   463.1 hours on the merits and 29.0 hours on fees, and Ms. Sherwin claims 302.1 hours,

17   including 256.4 hours on the merits and 45.7 hours on fees.  These figures reflect a 14.0-hour

18   reduction for Mr. Haddad and a 17.3-hour reduction for Ms. Sherwin based on counsel's

19   exercise of billing judgment.  Mr. Pearl does not claim any time for work spent on Plaintiffs'

20   damages claims.  The Court addresses Defendants' three objections to these claimed hours in

21   turn below.

22                          **a.    Common Work for All Six Plaintiffs**

23         Defendants first contend that time spent on common work, or work that Plaintiffs'

24   counsel would have performed whether they represented only one plaintiff or all six

25   plaintiffs, should be reduced to prevent double recovery by Plaintiffs' counsel.  Defendants

26   correctly observe that the damages settlements entered into by Plaintiffs Coles and Telles

27   included attorneys' fees and costs.  Defendants therefore recommend that "common work"

28   hours, such as the approximately 77.1 hours Mr. Haddad spent on Plaintiffs' summary

**United States District Court**
For the Northern District of California

judgment motion that raised issues common to all Plaintiffs, should be reduced by either one-third or one-half: one-third if the Court considers that the fractional share of common work spent on two out of six Plaintiffs has already been compensated, or one-half if the Court considers that the amounts received by Plaintiffs Coles and Telles in settling their damages claims is approximately half of the total amount received by all six Plaintiffs.

Plaintiffs oppose any reduction to the time claimed and argue that the claimed hours do not include over 196 hours spent on work "related to the damages claims of Sri Coles *only* . . . [and] *related only* to Dave Telles' damages claims." Haddad 3d Supp. Decl. ¶¶ 6-7 (emphasis added); *see also* Haddad 2d Supp. Decl. ¶ 11; Sherwin Supp. Decl. ¶ 15. Mr. Haddad made a similar representation at the motion hearing. Plaintiffs' assertions, however, fail to address whether the 196 hours already deducted includes work that was common to all Plaintiffs' damages claims. Moreover, although some reductions can be found at the end of some of the time entries including common work, Plaintiffs' reductions are both inconsistent and incomplete; reductions cannot be found at the end of every such entry and do not always, or even often, include proportional reductions to the common work for both Ms. Coles and Mr. Telles. Consequently, the Court concludes that Plaintiffs' deduction of 196 hours does not account for time spent on common work and, instead, more likely accounts only for time spent on claims related solely to Ms. Coles and Mr. Telles. Because the Coles and Telles settlements included attorneys' fees and costs, it would thus be improper to allow recovery for all claimed time spent on common work; to do so would impermissibly allow Plaintiffs to be paid twice for the portion of such work attributable to Ms. Coles and Mr. Telles.

To determine an appropriate reduction in hours, the Court conducted an independent review of Plaintiffs' counsel's time records as follows: First, the Court calculated the total number of hours spent on common work by Mr. Haddad and Ms. Sherwin through March 2, 2005, the date Mr. Telles agreed to settle his damages claims. If a time entry contained no indication of which Plaintiff the work related to, the Court considered the entry to be related to all Plaintiffs, including Ms. Coles and Mr. Telles. If an entry indicated work specifically

United States District Court
For the Northern District of California

related to any of the remaining four Plaintiffs and also included work that was common to all

Plaintiffs, the Court calculated the total number of hours spent on common work by

proportionally reducing the total number of hours based on the number of activities identified

in the time entry.[5]  The Court then reduced the total number of hours spent on common work

through March 2, 2005 by one-third, accounting for Plaintiffs' compensation for work done

on two out of six Plaintiffs' damages claims.  As a result of these calculations, Mr. Haddad's

82.75 common work hours through March 2, 2005, shall be reduced by 27.6 hours, and

Ms. Sherwin's 38.65 hours shall be reduced by 12.9 hours.

The Court performed a similar calculation to determine the amount of time spent on

common work between March 3, 2005, and November 28, 2005, the date on which

Ms. Coles settled her damages claims.  Because only five Plaintiffs remained at that time, the

Court reduced the number of hours for common work by only one-fifth, since Plaintiffs'

counsel have only been compensated for work done on one out of five remaining Plaintiffs'

damages claims.  Based on the Court's calculations, Mr. Haddad's 325.2 common work

hours between March 3 and November 28, 2005, shall be reduced by 65.0 hours, and

Ms. Sherwin's 96.4 hours shall be reduced by 19.3 hours.

Combining the above deductions, Mr. Haddad's time spent on the merits of Plaintiffs'

damages claims shall be reduced by 92.6 hours, and Ms. Sherwin's time shall be reduced by

32.2 hours.  These reductions account for the proportion of time spent on common work for

which counsel has already been compensated by the Coles and Telles settlements.

### b.   Hours Spent on the Merits After June 2005

Defendants also contend that all time claimed after June 2005 for work on the merits

of Plaintiffs' damages claims was unnecessary and excessive because, by that time, seventy-

---

[5]For example, on June 3, 2004, Mr. Haddad claimed 1.6 hours for three activities: "Draft Second Amended Complaint, file and serve; email to Julie Houk re: malicious prosecution; research re: supervisory liability."  Haddad 2d Suppl. Decl. Ex. C at 2.  Plaintiff Lindsay Parkinson was the only Plaintiff whose damages claim was based in part on malicious prosecution, so the e-mail to Julie Houk was attributable solely to Plaintiff Parkinson.  The Court therefore reduced the 1.6 hours by one-third, leaving a total of 1.07 hours spent on common work.  Admittedly, not all three tasks likely required the same amount of time, but the Court finds that this method of calculating time spent on common work provides a reasonable approximation.

1    five percent of plaintiffs in this case and *Local 10* had already settled their damages claims.

2    Defendants further argue that the similarity in claims and the ultimate settlement agreements

3    reached by the four remaining Plaintiffs and the other plaintiffs who settled also justifies

4    denying Plaintiffs' counsel any fees for work done after June 2005.

5        However, regardless of any similarity between the claims asserted by Plaintiffs

6    Bohning, Hansen, Parkinson, and Smith and the plaintiffs who were able to reach a

7    settlement agreement with Defendants, there is no indication that Plaintiffs' counsel were

8    unnecessarily prolonging this litigation by refusing to settle the damages claims of the four

9    remaining Plaintiffs.  Indeed, a bedrock principle of professional responsibility is that "a

10   lawyer shall abide by a client's decision whether to settle a matter," Am. Bar Ass'n Model

11   Rule 1.2, and it may very well be that these four Plaintiffs did not give their consent to settle

12   their claims until the eve of trial.  Simply put, the fact the majority of plaintiffs in this case

13   and *Local 10* settled their cases by a certain date does not, without any evidence to the

14   contrary, make it unreasonable for counsel to pursue this case vigorously on behalf of other

15   plaintiffs after that date, and the Court will not reduce the claimed number of hours based on

16   this objection.

17                              **c.    Hours Spent on Fees**

18       Defendants' final objection to Plaintiffs' counsel's hours is simply a reprise of their

19   prior argument that any work performed after June 2005 should not be compensated.

20   Defendants argue that the damages fee motion would not have been necessary had Plaintiffs'

21   counsel resolved their clients' claims by June 2005 or had counsel agreed to reduce their fee

22   demands in a manner Defendants believe would have been reasonable.  The Court rejects

23   these broad arguments for the same reasons discussed previously in this order.  In addition,

24   without any specific objections to the hours spent by Plaintiffs' counsel on the fee motion,

25   and following the Court's independent review of Plaintiffs' time entries for fees related to

26   Plaintiffs' damages claims, the Court finds it inappropriate and unnecessary to reduce the

27   number of hours claimed for such work; Plaintiffs' requested number of hours for this work

28   is reasonable.

**C.     Calculation of the Lodestar**

In light of all of the above, the Court calculates the total lodestar for Plaintiffs' counsel's work to be $536,118.00, as shown below:

**Injunctive Relief**

| Attorney | Type of Work | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Michael Haddad | Merits | $400 | 218.85 | $87,540.00 |
| | Fees through 09/27/05 | $400 | 121.8 | $48,720.00 |
| | Fees for 09/28/05-12/31/05 | $400 | 7.8 | $3,120.00 |
| | Fees in 2006 | $420 | 44.3 | $18,606.00 |
| Julia Sherwin | Merits | $380 | 97.8 | $37,164.00 |
| | Fees through 09/27/05 | $380 | 51.4 | $19,532.00 |
| | Fees for 09/28/05-12/31/05 | $380 | 3.7 | $1,406.00 |
| | Fees in 2006 | $400 | 0.6 | $240.00 |
| Richard Pearl | Fees through 09/27/05 | $495 | 60.05 | $29,724.75 |
| | Fees for 09/28/05-12/31/05 | $495 | 4.95 | $2,450.25 |
| | Fees in 2006 | $525 | 22.6 | $11,865.00 |

**TOTAL LODESTAR FOR INJUNCTIVE RELIEF     $260,368.00**

**Damages**

| Attorney | Type of Work | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Michael Haddad | Merits | $420 | 370.5 | $155,610.00 |
| | Fees | $420 | 29.0 | $12,180.00 |
| Julia Sherwin | Merits | $400 | 224.2 | $89,680.00 |
| | Fees | $400 | 45.7 | $18,280.00 |

**TOTAL LODESTAR FOR DAMAGES     $275,750.00**

**OVERALL TOTAL LODESTAR     $536,118.00**

**III.   Multiplier Award**

Under California fee-shifting provisions, once the lodestar is calculated, courts have discretion to make upward or downward adjustments to the merits lodestar based on

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    consideration of certain factors, including the novelty and difficulty of the questions

2    involved, the skill displayed in presenting them, the extent to which the nature of the

3    litigation precluded other employment by the attorneys, and the contingent nature of the fee

4    award. *Ketchum*, 24 Cal. 4th at 1132-1134.  The purpose of a lodestar adjustment is to "fix

5    the fee at the fair market value for the particular action" by determining "whether the

6    litigation involved a contingent risk or required extraordinary legal skill justifying

7    augmentation of the unadorned lodestar." *Id.*

8         The lodestar for fees work may also be adjusted based on similar factors. *Graham*, 34

9    Cal. 4th at 581-584.  Additional factors that may be considered to enhance the lodestar on

10   fees include: delay in payment, extraordinary difficulties caused by the opposition to the fee

11   motion, and contingent risk. *Id.*   When a multiplier is applied to the fees lodestar, however,

12   it should be lower than that applied to the merits lodestar because the contingent risk of

13   nonpayment is not as great as the risk taken by an attorney in initially deciding to pursue the

14   merits of a case. *Id.* at 582-83.

15        Plaintiffs' counsel request a multiplier of 1.5 for the total merits lodestar, including

16   work on both Plaintiffs' injunctive relief and damages claims.  In addition, Plaintiffs' counsel

17   seek a multiplier of 1.1 for the lodestar for fees work on injunctive relief claims through

18   September 27, 2005.  Plaintiffs do not seek a multiplier for fees work on their damages

19   claims or on their injunctive relief claims after September 27, 2005.

20        Defendants contend that no multiplier is appropriate for work at any stage of this case

21   and first argue about the lack of contingent risk facing Plaintiffs' counsel at the onset of this

22   litigation, pointing out that the City of Oakland began its own review of the Oakland Police

23   Department's crowd control policy prior to Plaintiffs' filing suit.  Defendants also

24   characterize the litigation of Plaintiffs' injunctive relief claims as a process during which

25   Defendants were "fully cooperating with plaintiffs to accomplish change acceptable to all

26   parties."  Inj. Relief Opp'n at 5.  However, as the Court previously explained, Defendants'

27   characterization of this portion of the litigation is inaccurate:

28

24

1
2
3
4
5
6
7
8
9
10

[A]lthough Defendants initiated an internal review of their crowd control policies prior to the filing of these lawsuits, they failed to respond to citizen complaints filed before the litigation began.  Nor did Defendants invite the complainants or their counsel to discuss the City's crowd control policy prior to the onset of litigation.  In addition, *Defendants' proposed policy differs markedly from the final result, achieved after what Defendants acknowledge in the settlement agreement was over ten months of difficult and comprehensive negotiations between the parties.*  Thus, even if Defendants unilaterally began the process of reviewing and revising their crowd control policies, the filing of these lawsuits to enforce Plaintiffs' civil rights, and the involvement of Plaintiffs' counsel in negotiating the language of the revised policies, had significant effects on the outcomes of that process.  There is no indication that the same results would have been achieved in the absence of litigation, or even that the internal review would ultimately have resulted in a revised policy at all.

11    Sept. 27, 2005 Order at 7-8 (emphasis added).

12         Additionally, the relevant time at which to assess the contingent risk facing Plaintiffs

13    is the onset of litigation, at which point Plaintiffs faced the contingent risk of not prevailing

14    on the merits even when considering Defendants' willingness to negotiate.  Such risk is not

15    compensated in calculating the lodestar under state law, as "the unadorned lodestar reflects

16    the general local hourly rate for a fee-bearing case; it does not include any compensation for

17    contingent risk."  *Ketchum*, 24 Cal. 4th at 1138.  The Court will therefore consider contingent

18    risk as a factor in enhancing the total lodestar for Plaintiffs' counsel's work on the merits of

19    Plaintiffs' injunctive relief and damages claims.

20         Defendants also contend that Plaintiffs' counsel improperly request an enhancement

21    based on exceptional skill or results obtained.  A "multiplier for exceptional representation"

22    should only be awarded by the trial court "when the quality of representation *far exceeds* the

23    quality of representation that would have been provided by an attorney of comparable skill

24    and experience billing at the hourly rate used in the lodestar calculation."  *Ketchum*, 24 Cal.

25    4th at 1139 (emphasis added).  A multiplier may also be applied "where an exceptional effort

26    produced an exceptional benefit."  *Graham*, 34 Cal. 4th at 582.  Based on the Court's

27    experience with this case, Plaintiffs' counsel falls short of meeting these standards; instead,

28    the Court finds that Plaintiffs' counsel displayed only comparable rather than exceptional

United States District Court
For the Northern District of California

1   skills to other attorneys with similar experience and billing rates and, similarly, that the

2   results obtained in this case were not exceptional.  Accordingly, Plaintiffs' counsel's skill

3   and the results obtained shall not be used as factors to enhance the lodestar in this case.

4        Plaintiffs' counsel next briefly argue that the Court should enhance the lodestar

5   because counsel have turned away other potentially lucrative work, including "numerous"

6   potential contingency-fee clients and "at least five" potential fee-paying clients during the

7   course of this case.  Haddad Decl. ¶ 31.  While this information certainly reveals that this

8   case has had an impact on Plaintiffs' counsel's business, it is also clear from Plaintiffs'

9   counsel's declarations that they have been able to maintain their practice.  Indeed, in the past

10  year, Plaintiffs' counsel have achieved legal victories in at least two other cases – another

11  civil rights case and a medical malpractice case.  Haddad 2d Supp. Decl. ¶ 2; Sherwin Supp.

12  Decl. ¶ 5.  Thus, the Court does not find good cause to enhance the lodestar based on

13  counsel's purported preclusion from other employment while this case was pending.

14       The Court also finds it unnecessary to enhance the lodestar based on the additional

15  "public interest value" factor identified by Plaintiffs.  While the Court agrees that the

16  injunctive relief obtained in this case does serve the public interest and that attorneys who

17  serve the public interest should be rewarded, such incentives are adequately reflected in the

18  lodestar analysis pursuant to the private attorney general doctrine and need not be

19  additionally rewarded by a multiplier.

20       Finally, given that Defendants so vigorously opposed Plaintiffs' fee requests for

21  injunctive relief work, the Court finds it appropriate to award a multiplier, as Plaintiffs

22  request, on the lodestar for fees work through September 27, 2005, the date on which the

23  Court found Plaintiffs to be entitled to fees.  Up until that time, Plaintiffs' counsel faced a

24  contingent risk of "not establishing eligibility for an attorney fee award."  *Graham*, 34 Cal.

25  4th at 583.  The fees multiplier will be lower than the merits multiplier, however, given that

26  the contingent risk was not as great as at the outset of this litigation.

27       Based on the above discussion, the Court awards a multiplier for all stages of this

28  litigation to compensate for contingent risk only.  A 1.1 multiplier, or ten percent increase,

United States District Court

For the Northern District of California

will be applied to the lodestar for counsel's work on the merits of Plaintiffs' injunctive relief and damages claims, and a 1.05 multiplier, or five percent increase, will be applied to the lodestar for work on fees for injunctive relief through September 27, 2005, the date on which this Court established Plaintiffs' entitlement to such fees.  The Court makes these enhancements based on its understanding of this litigation, and the multipliers are designed to fix the fee award at the fair-market value for this particular action.  While the Court recognizes that the awarded multipliers are significantly lower than those Plaintiffs requested and those that have been awarded in other cases, the Court does not believe the circumstances of this case warrant a high multiplier.  Although Plaintiffs' counsel did assume some risk in these cases, the willingness of Defendants to engage in settlement discussions and revise their crowd control policy from the outset of this litigation lessened that risk considerably.  Moreover, this case was not especially protracted and, as discussed above, the Court finds neither counsel's skill nor the results obtained in this case to be exceptional enough to enhance the lodestar.

## IV.   Costs

In addition to seeking attorneys' fees, Plaintiffs' counsel seek $33,242.35 in costs, including $13,290.68 on Plaintiffs' injunctive relief claims and $19,951.67 on damages claims.  Of this amount, Defendants contest $9500 in claimed expert witness fees because Plaintiffs' itemization of costs does not identify the experts by name.  Haddad Decl. Ex. B at 1.  However, as discussed in a prior section of this order, other records submitted by Plaintiffs identify Lou Reiter and Larry Danaher as Plaintiffs' experts, and these experts' reports were previously served on Defendants.  Defendants' objection is therefore unpersuasive, and Plaintiffs may recover the $9500 in expert fees under California Code of Civil Procedure section 1021.5.  *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1421-22 (1991) (holding that expert witness fees may be awarded under section 1021.5 if they represent expenses ordinarily billed to a client and are not included in the overhead component of counsel's hourly rate).

1   Defendants also argue that Plaintiffs' common costs on damages claims should be

2   reduced based on the Coles and Telles settlements.  The Court agrees for the same reasons

3   that the Court found a reduction in the number of hours for common work on Plaintiffs'

4   damages claims to be appropriate.  Through March 2, 2005, the date of the Telles settlement,

5   common costs amounted to $935.01, and an additional $10,129.16 was spent on common

6   costs after March 2 but before November 28, 2005, the date of the Coles settlement.[6]

7   Accordingly, Plaintiffs' claimed costs will be reduced by one-third of $935.01 and one-fifth

8   of $10,129.16, for a total reduction of $2337.50.  Plaintiffs shall therefore be awarded

9   $30,904.85 in costs.

10

11   **V.      Interest**

12   Finally, Plaintiffs' counsel seek interest on their total award of fees and costs for work

13   performed on Plaintiffs' injunctive relief claims prior to September 27, 2005, at a 3.88%

14   annual rate.  Defendants do not dispute Plaintiffs' entitlement to interest on these fees and

15   costs, nor do they dispute that 3.88% is the proper annual interest rate.  Accordingly,

16   Plaintiffs shall be awarded interest, at an annual rate of 3.88%, on $240,049.99 in fees

17   ($124,704 x 1.1 multiplier for work on merits plus $97,976.75 x 1.05 multiplier for work on

18   fees through September 27, 2005) and $13,290.68 in costs.

19

20   **CONCLUSION**

21   In sum, IT IS HEREBY ORDERED that Plaintiffs' motions for attorneys' fees and

22   costs are GRANTED IN PART and DENIED IN PART consistent with the above discussion.

23   Defendants shall pay Plaintiffs' counsel $621,512.12, as detailed in the table below, within

24   thirty calendar days of the date of this order.  This resolves the only outstanding dispute

25   between the parties, and the Clerk shall therefore close the file.

26

27

28   [6]In calculating these figures, the Court apportioned the 2005 mileage, parking, tolls, and postage costs by average cost per month.

United States District Court

For the Northern District of California

**Attorneys' Fees**

| Type of Work | Lodestar | Multiplier | Enhanced Lodestar | Interest[7] | Total |
|---|---|---|---|---|---|
| Merits on Injunctive Relief | $124,704.00 | 1.1 | $137,174.40 | $6,817.57 | $143,991.97 |
| Fees on Injunctive Relief through 09/27/05 | $97,976.75 | 1.05 | $102,875.59 | $5,112.92 | $107,988.50 |
| Fees on Injunctive Relief after 09/27/05 | $37,687.25 | 1.0 | $37,687.25 | $0.00 | $37,687.25 |
| Merits on Damages | $245,290.00 | 1.1 | $269,819.00 | $0.00 | $269,819.00 |
| Fees on Damages | $30,460.00 | 1.0 | $30,460.00 | $0.00 | $30,460.00 |

**TOTAL FEES AWARDED**    $589,946.72

**Costs**

| Item | Amount | Interest | Total |
|---|---|---|---|
| Costs on Injunctive Relief | $13,290.68 | $660.55 | $13,951.23 |
| Costs on Damages | $17,614.17 | $0.00 | $17,614.17 |

**TOTAL COSTS AWARDED**    $31,565.40

**TOTAL FEES AND COSTS AWARDED**    $621,512.12

**IT IS SO ORDERED.**

Dated:   01/04/07

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

_____

[7]At a 3.88% annual interest rate, compounded annually, the total interest from September 27, 2005, amounts to approximately 4.97% $(1.0388 * (1 + ((0.0388/52) * 14)) - 1)$.